LEWIS L. LACHANCE & another *vs.* FIRST NATIONAL BANK
AND TRUST COMPANY OF GREENFIELD, trustee, &
another.

Franklin.    September 21, 1938. — November 29, 1938.

Present: FIELD, C.J., DONAHUE, LUMMUS, QUA, & RONAN, JJ.

*Adverse Possession or Use.*

In a suit in equity to enjoin a continuing trespass on a small strip of land
of the plaintiff, findings by a master of continuous overt acts on the
strip by the defendant and his predecessors in title for twenty years,
including the removal of an old fence, filling, the building of a hen coop
and the erection of a stone wall close to the plaintiff's dwelling, war-
ranted conclusions that the plaintiff and his predecessors in title had
actual knowledge of such acts and that the defendant and his predeces-
sors in title had had open, peaceable, continuous and exclusive pos-
session of the strip under a claim of right for a period sufficient to
establish a title by adverse possession.

BILL IN EQUITY, filed in the Superior Court on June 17,
1937.

A final decree dismissing the bill was entered by order of
*Leary,* J.    The plaintiffs appealed.

*H. Sherman,* for the plaintiffs.

*M. J. Levy,* for the defendants.

RONAN, J.    The plaintiffs seek an injunction against the
defendants to restrain them from further trespassing upon
the plaintiffs' land and to compel them to remove certain
structures placed upon said premises.    The corporate trus-
tee has been substituted for the individual trustee named
in the bill, and will be hereinafter referred to as the defend-
ant.    The other defendant is the tenant of the premises
now owned by the trustee.

The plaintiffs, since 1936, have been the owners of a cer-
tain lot of land located upon the southerly side of Arch
Street in Greenfield.    The land of the defendant is located
next to and westerly of the plaintiffs' lot.    W. E. Benson
acquired the land now owned by the defendant in June,

1912, and conveyed it to Julia A. Benson in October, 1912, and she, in September, 1917, conveyed it to Joseph Shulda and Mary L. Shulda, as joint tenants. Mrs. Shulda survived her husband and the defendant now holds title as trustee under her will, which was probated on June 1, 1937. The locus in dispute is a trapezoid shaped parcel three and three tenths feet wide on Arch Street, and fifteen and four one hundredths feet wide at its base; its easterly and westerly boundaries are about eighty-eight feet long, the entire depth of the lots of the parties. The westerly line of this trapezoid is the westerly boundary line of the plaintiffs' lot, and the disputed area is entirely within their lot. The case was referred to a master whose report was confirmed, and a final decree was entered dismissing the bill. The plaintiffs appealed from the final decree.

The single issue is whether or not the defendant has a title by adverse possession to the disputed area. The master found that the plaintiffs have the record title to this area and that the defendants are trespassers "unless the plaintiffs have been disseised of the land in dispute, based on the following facts . . . ." These facts, in effect, were that Benson, a former owner of the defendant's land, sometime late in 1912, removed an old picket fence running along what is now the easterly line of the disputed area, after having had a survey made and iron pins set at the northerly and southerly ends of this easterly line. The master was unable to find that this fence had been erected for a period of twenty years, but found that it had been maintained by Benson's predecessors in title for a period of longer than five years; that Benson dug a cellar upon the lot in 1916, and some of the excavated material was deposited upon the area in question; that since 1918 the Shuldas had deposited earth and ashes in this area and such filling was continued up to the filing of the bill of complaint; that the Shuldas built a hen coop partially located on this area; that their son, Andrew Shulda, in 1932 or 1933, started the construction of a stone wall along the easterly boundary of this area and completed the same in 1934 or 1935; that it is now impossible to drive a truck

between this wall and the westerly side of the plaintiffs' house; and that the times at which these acts above enumerated were performed, if "tacked together," would comprise a period of more than twenty years prior to the filing of the bill in the present suit.

The master sets out all the facts upon which the defendants relied to show that the corporate defendant had title by adverse possession, but he did not decide that issue, although it was clearly within his province to do so. *Pray* v. *Brigham,* 174 Mass. 129. *Bartlett* v. *The Roosevelt, Inc.* 258 Mass. 494. *Truc* v. *Field,* 269 Mass. 524. The report contains findings of all the material facts upon which evidence was submitted and while, in the absence of a report of evidence, the subsidiary facts must stand, it is our duty to draw inferences from the facts found and to reach the general conclusion which the reported facts support and warrant. *Smith* v. *Kenney,* 213 Mass. 6, 9. *Adams* v. *Whitmore,* 245 Mass. 65, 67. *Ryder* v. *Donovan,* 282 Mass. 551, 554. *MacLeod* v. *Davis,* 290 Mass. 335.

The nature and the extent of occupancy required to establish a right by adverse possession vary with the character of the land, the purposes for which it is adapted, and the uses to which it has been put. Evidence insufficient to establish exclusive possession of a tract of vacant land in the country might be adequate proof of such possession of a lot in the center of a large city. *Stevens* v. *Taft,* 11 Gray, 33. *Bowen* v. *Guild,* 130 Mass. 121, 123. *Houghton* v. *Wilhelmy,* 157 Mass. 521. *Tinker* v. *Bessel,* 213 Mass. 74. We are here dealing with a small parcel of land located upon one of two adjoining lots, one having a frontage of sixty-five feet and the other of about seventy-five feet. The structure on either lot was not far distant from that on the other, and the use made of his land by an occupant of one lot was visible and apparent to the occupant of the other. The removal of the old fence, the filling of the locus in 1916 and the further and continuous filling since 1916, the building of the hen coop, and, finally, the erection of the stone wall, which took two years to build, were all of a notorious character. The northerly end of

this wall was very close to the plaintiffs' dwelling. The filling of the land and the erection of the wall were permanent improvements indicative of an intention upon the part of the occupants to use and appropriate the land to their own benefit and to the exclusion of all others. The building of the hen coop upon a part of the area in dispute was accumulative evidence of such an intent and purpose. The making of such changes upon the land constituted such a control and dominion over the premises as to be readily considered acts similar to those which are usually and ordinarily associated with ownership. *Tufts* v. *Charlestown*, 117 Mass. 401. *First Baptist Church of Sharon* v. *Harper*, 191 Mass. 196, 208. *Phipps* v. *Crowell*, 224 Mass. 342. The nature of these improvements, their location upon the land, and the length of the period during which they were being made, as shown by the findings of the master, were sufficient to warrant the inference that they were performed under a claim of right. *White* v. *Chapin*, 12 Allen, 516, 519. *Wishart* v. *McKnight*, 184 Mass. 283, 286. *Van Allen* v. *Sweet*, 239 Mass. 571.

The master reports that "There was no evidence that the plaintiffs or their predecessors in title ever objected to the acts of the defendants or their predecessors in title until the bringing of this bill in equity," and it could be reasonably inferred that the plaintiffs and their predecessors in title impliedly, at least, acquiesced in such use and enjoyment of the locus, even in the absence of a direct finding that they had actual knowledge of the making of such improvements. Upon the facts found by the master, proof of actual knowledge of the plaintiffs or of the former owners of their land was not essential to the accrual of adverse rights, *Samuels* v. *Borrowscale*, 104 Mass. 207; *Attorney General* v. *Ellis*, 198 Mass. 91, 98, as it could properly have been found that the nature of the changes made upon the locus during a long course of years "constituted notice to all the world . . . of an adverse claim of title." *Phipps* v. *Crowell*, 224 Mass. 342, 343.

The instant case is distinguishable from those cases where the management of the land by the occupant was such as

not to evince a notorious assertion of dominion and ownership, and was insufficient to give either actual or constructive notice to the owner that an adverse claim to his land was being advanced and maintained. *White* v. *Shippee*, 216 Mass. 23. *McDonough* v. *Everett*, 237 Mass. 378. *Nantucket* v. *Mitchell*, 271 Mass. 62. *Bates* v. *Cohasset*, 280 Mass. 142.

The findings of the master show that the defendant and its predecessors in title have had open, peaceable, continuous and exclusive possession of the strip of land under a claim of right. The defendant has title to the premises by adverse possession. *Cohasset* v. *Moors*, 204 Mass. 173. *Enfield* v. *Woods*, 212 Mass. 547. *Keith* v. *Kennard*, 222 Mass. 398. *Barker* v. *Kennard*, 226 Mass. 586. *Dow* v. *Dow*, 243 Mass. 587. *Grinuk* v. *Chapin National Bank*, 265 Mass. 30.

*Decree affirmed.*