MANDEL SHOER *vs.* J. ROBERT DAFFE & another.

Essex.   January 7, 1958. — April 21, 1958.

Present: WILKINS, C.J., RONAN, WILLIAMS, COUNIHAN, & CUTTER, JJ.

*Adverse Possession and Prescription.   Equity Pleading and Practice,* Master: findings.

Where a master's report states that his conclusions are based upon all the evidence and the evidence is not reported, the conclusions are binding on the trial judge and on this court on appeal unless the subsidiary findings included in the report demonstrate that the conclusions are unsound. [423]

Continuity of possession of a parcel of land relied upon by the record owner of adjoining premises claiming title to the parcel by adverse possession was not interrupted as matter of law by the mere fact that possession of the parcel during a portion of the requisite period was incidental to occupancy of the claimant's premises by successive tenants of one who had purchased those premises at a mortgage foreclosure sale. [424]

Upon a purchase of mortgaged premises by the mortgagee at a foreclosure sale followed by possession of the premises by the former owner for a short time and immediately thereafter by a tenant of the purchaser, adverse possession of a parcel of land adjacent to the premises by the tenant could properly be tacked to adverse possession of that parcel by the former owner. [424]

Where subsidiary findings by a master were that the record owner of a lot erected a house thereon and "completely encompassed" such house lot and also a triangular parcel of adjoining land owned by another with a privet hedge, that the triangular parcel was "planted to lawn" and was "a part of the spacious grounds in the rear" of the house, and that such physical situation continued without the consent of the adjoining owner for more than twenty years, including a period of occupancy of the house lot by successive tenants of one who had purchased the house lot at a mortgage foreclosure sale, an inference was justified that the landlord of the tenants claimed title to all the land encompassed

by the hedge; a conclusion by the master, based on unreported evidence, that ultimately an owner of the house lot had acquired title by adverse possession to the triangular parcel was not shown to be unsound by such subsidiary findings; and it was error for the trial judge to substitute for the master's conclusion a conclusion that continuity of possession of the triangular parcel had been interrupted by the occupancy of the tenants so that title thereto by adverse possession had not been acquired. [424–425]

BILL IN EQUITY, filed in the Superior Court on October 15, 1951.

The suit was heard by *Morton, J.,* on a master's report.

*Harry A. Simon, (George A. Brown* with him,) for the plaintiff.

*Edward J. Bushell, (John J. Irwin, Jr.,* with him,) for the defendants.

WILLIAMS, J. This is a suit to restrain the defendants from interfering with the plaintiff's possession of a parcel of land in Salem and to establish his ownership thereof by adverse possession. The facts, which have been found by a master, are as follows. The parties are adjoining owners of lots in a tract of land at the junction of Loring Avenue and Sumner Road shown on a surveyor's plan recorded in book of plans 16, plan 16, Essex South District registry of deeds. The plaintiff has record title to lots 16 to 22 inclusive and the defendants to lots 23 to 26 inclusive. The land in dispute is a triangular area, known as the "Flat Iron Piece," containing 556 square feet which is a part of lot 23 and adjoins lot 22. All of these lots were formerly owned by the trustees of Loring Realty Company. At some time previous to October 20, 1922, the trustees conveyed lots 16 to 22 to William C. Stanley. In 1921 he erected a house on the property, now known as 114 Loring Avenue, and "completely encompassed" all of his land including the triangular area with a privet hedge. The locus "was planted to lawn and still is a part of the spacious grounds in the rear" of the plaintiff's house.

On October 20, 1922, Stanley conveyed the lots to his wife, Felixia Stanley. Mrs. Stanley mortgaged them to National City Bank of Lynn in 1924. The bank entered to

foreclose on November 7, 1929, and sold the property at foreclosure sale on November 19, 1929. It bought in the property at the sale. Thereafter the Stanley family continued in possession of the property by arrangement with the bank for three or four months. From the time Stanley left the property it was occupied continuously by a succession of tenants of the bank. On October 1, 1942, the bank conveyed the lots to William L. Shoer and on the following December 9 he conveyed them to the plaintiff who is now the record owner.

The defendants hold record title to lots 23–26 through a series of mesne conveyances stemming from a deed of the surviving trustee of Loring Realty Company to one Amanda Flynn on April 20, 1938.

In conclusion the master found that "on all the evidence . . . Mandel Shoer and his predecessors in title have been in actual possession of the premises in question for a period of some thirty-three years. The evidence is uncontradicted that the acts of the plaintiff and those claiming prior to him manifested the intent to hold the land openly and exclusively under claim of right adverse to that of J. Robert Daffe and Marie Daffe and their predecessors in title. The continuity of physical possession of the area clearly marked by visible boundaries, i.e. the hedge, together with the continuous use of the area showed an intent to control and claim the whole of that area that has been referred to as the 'Flat Iron Piece.' The owners of lots 16 to 22 (now owned by Mandel Shoer) by the cultivation and use of the entire area appurtenant to the premises numbered 114 Loring Avenue without the consent of the owner or owners of lots 23 to 26 has resulted in the perfecting of a title by adverse possession in Mandel Shoer."

The defendants filed objections to the master's report. An interlocutory decree was entered ordering that their second and third exceptions (objections) be sustained; that "the conclusion of the master that the plaintiff and his predecessors in title had had continuous actual possession of the disputed area for more than twenty years, openly

and without the consent of the record owner, under a claim of right which has been uninterrupted, be stricken from the report and there be substituted in place thereof the following conclusion: That the continuity of possession of the plaintiff of the disputed area, under a claim of right to the title, was interrupted by the possession of said area from 1929 to 1942 by tenants of a mortgagee thereof and the grantor of the plaintiff. In consequence thereof, the plaintiff has not acquired title by adverse possession to said premises. And that the report of the master, as so modified, be and hereby is confirmed; and a final decree may be entered, dismissing the bill and for costs."

The plaintiff filed a claim of exceptions, which does not appear to have been prosecuted, and appealed from the interlocutory decree and from a final decree whereby the bill was dismissed.

Since the evidence is not reported and the master states that his conclusions are based upon all the evidence, the trial judge was bound by those conclusions, as we are upon appeal, "unless the subsidiary findings included in the report are sufficient in themselves to demonstrate that the conclusion must be unsound in law." *Kasper* v. *H. P. Hood & Sons, Inc.* 291 Mass. 24, 25. *Dodge* v. *Anna Jaques Hospital*, 301 Mass. 431, 435. These findings show an actual possession of the locus taken by Stanley at or about the time he built his house in 1921. He planted it to lawn and surrounded it and the rest of his property with a hedge. His use was that ordinarily made only by an owner. Tiffany, Law of Real Property (3d ed.) § 1148. See *Wood* v. *Quintin*, 328 Mass. 118. It is reasonably inferable that his possession was taken under a claim of ownership. *Bond* v. *O'Gara*, 177 Mass. 139, 143. This possession was continued by the Stanley family until 1929 or 1930, then by tenants of the bank until 1942, and thereafter by William L. Shoer and the plaintiff. It could be found to have all of the characteristics necessary to the establishment of title by adverse possession, namely, that it was actual, open, under a claim of right to the fee, and continuous for the period of twenty

years within which time the true owner of the land might commence an action for its recovery. *Daley* v. *Daley*, 308 Mass. 293, 305. *Holmes* v. *Johnson*, 324 Mass. 450, 453, and cases cited. G. L. (Ter. Ed.) c. 260, § 21. The continuity of possession was not as matter of law interrupted by the occupancy of the tenants of the mortgagee. The possession of the first tenant of the bank after it acquired title by foreclosure sale followed the possession of Stanley and could be tacked to that possession. *Wishart* v. *McKnight*, 178 Mass. 356. There appears to have been no break in the continuous possession by the subsequent tenants. It was said in the second *Wishart* case, 184 Mass. 283, at pages 285–286, "To warrant a finding that there was a continuity of possession, we do not deem it necessary to show by express testimony that the new occupant was personally present upon the premises before the former occupant departed, and that there was a formal manual transfer of possession of this strip as a part by itself. There is a fair inference that a tenant, on his departure at the expiration of his term, surrenders the possession to his landlord, and that their possession is continuous, or rather, that the possession of the owner is continuous, although the two do not meet personally upon the premises at the end of the term. The possession of the tenant is the possession of the landlord."

The defendants contend that, as the master has not found that the bank claimed title to the locus, the possession of its tenant beyond the bounds of the land to which it had title cannot be held to be its possession. We think, however, that the master could fairly infer that when the bank, following the occupancy of Stanley, delivered possession of the property to its tenant, it evidenced a claim of title to all of the land which the tenant was expected to take, namely that which had been occupied by Stanley within the bounds defined by the hedge. In *Holmes* v. *Johnson*, 324 Mass. 450, on which the defendants rely, a case very similar in its facts to the instant case, there was an express finding by the master that the landlord bank did not claim any right in fee to the area occupied by its tenant.

We think that the judge was in error in substituting his conclusion for that of the master.

The interlocutory and final decrees are reversed. An interlocutory decree is to be entered confirming the master's report as filed. A final decree is to be entered establishing that title to the locus is in the plaintiff by adverse possession and that the defendants be permanently enjoined from interfering with the plaintiff's possession; the plaintiff to be entitled to his costs.

*So ordered.*