CHARLES BENNETT *vs.* PATRICIA E. PAPETSAS
(and a companion case[1]).

Barnstable.   June 6, 1978. — August 30, 1978.

Present: HALE, C.J., GOODMAN, & GRANT, JJ.

*Adverse Possession and Prescription. Real Property,* Boundary. *Practice, Civil,* Master: findings.

In an action by a landowner seeking to enjoin the owner of an adjacent parcel of land from obstructing access to his property through a twelve foot opening in a stone wall, a finding that the plaintiff had exercised open and uninterrupted use of that portion of the passageway located on the defendant's property over a period in excess of twenty years raised a presumption that such use was adverse and under a claim of right giving rise to an easement by prescription. [570–571]

In an action by a landowner to quiet title to an area of land on which there was a garage and grassy space occupied by an adjacent landowner as part of his land, findings which established that the occupant and his predecessors in title had open, peaceable, continuous, and exclusive possession of the disputed locus over a period of sixty years required the conclusion that the occupant had acquired ownership of the locus by adverse possession. [571–572]

BILLS IN EQUITY filed in the Superior Court on June 26, 1973, and June 29, 1973, respectively.

The suits were heard by *Keating,* J., on a master's report.

*Edward E. Veara* for Charles Bennett & another.

*Christopher J. Snow (John C. Snow* with him) for Patricia E. Papetsas.

GOODMAN, J. Charles Bennett, owner with his wife[2] of

---

[1] Patricia E. Papetsas *vs.* Charles A. Bennett & another.

[2] All references hereafter to Bennett will, unless the context otherwise requires, include his wife.

a parcel of land numbered 70A Commercial Street, Provincetown, brought an action in the Superior Court against Patricia E. Papetsas, owner of an adjacent parcel of land numbered 70 Commercial Street, to enjoin her from obstructing access to his land through a twelve foot opening in a stone wall. The stone wall and a three foot strip behind the wall are owned by Bennett; of the land facing the opening beyond the three foot passage one-third is owned by Bennett and two-thirds by Papetsas. Papetsas then brought an action against Bennett seeking to enjoin him from trespassing on her land and to quiet and confirm title to her land to include an area, distinct from the disputed access area, of about four hundred square feet (the locus) on which there are a garage and a grassy space which Bennett has occupied as part of his land. The locus is included in the deed to Papetsas' land and is adjacent to Bennett's land. The actions were referred to a master, who made an extensive report of the facts and concluded that Papetsas should prevail in both actions. The judge adopted the master's report and entered judgments dismissing Bennett's action and granting Papetsas the relief she sought in her action. Bennett appealed. We reverse both judgments.

The master found generally: "As will be shown later in this report, there was testimony of certain trespasses on the land of Mrs. Papetsas as well as on the land of Mr. Bennett. I find that such trespasses by Mr. Bennett's group upon Mrs. Papetsas land have not and do not constitute any adverse use or possession as to constitute any claim of right to any portion of the land involved." The order of reference as described at the outset of the master's report required the master "to report [his] findings of fact to the Court"; and the subsidiary findings are reported in such detail that it is reasonable to assume that the master complied with the order of reference and that the subsidiary findings are all the findings on which the general findings are based. *Jones* v. *Gingras*, 3 Mass. App. Ct. 393, 395 (1975), citing *Deyo* v. *Athol Housing*

*Authy.*, 335 Mass. 459, 463 (1957), in which the court said, "While he [(in that case an auditor)] states that his conclusions are based upon all of the evidence . . . he reports . . . express findings in such detail that it is reasonable to assume they are all of the findings on which his conclusions are based." See *Larson* v. *Brockton Agricultural Soc.*, 344 Mass. 463, 465 (1962); *Cohen* v. *Garelick*, 344 Mass. 654, 659 (1962). See also the discussion in *Bills* v. *Nunno*, 4 Mass. App. Ct. 279, 282 n.2 (1976). We thus look to the subsidiary findings "shown later in this report" and draw our own conclusions from those subsidiary findings and the inferences that ought to be drawn from them. *O'Brien* v. *Dwight*, 363 Mass. 256, 281 (1973), and cases cited.

1. The master found that the Papetsas family and the Bennett family have, for many years, been using the twelve foot opening in the wall to drive their automobiles to their respective properties. So far as appears, that opening is the only means of access to Bennett's property. The master further found that Bennett had owned an automobile since the nineteen twenties, that he had been using the passageway ever since, and that "Mr. Bennett and his family have been using this same opening in excess of twenty years to enter and exit from their residence at 70A Commercial Street." These findings of open and uninterrupted use over a period in excess of twenty years raise a presumption that such use was adverse and under a claim of right giving rise to an easement by prescription. *Tucker* v. *Poch*, 321 Mass. 321, 324 (1947). *Flynn* v. *Korsack*, 343 Mass. 15, 18 (1961). *Mastandrea* v. *Baressi*, 2 Mass. App. Ct. 54, 56–57 (1974). *Bills* v. *Nunno*, 4 Mass. App. Ct. at 280–281. And there is nothing in the subsidiary findings to indicate that Bennett's use was by permission inconsistent with the claim of right. *Flynn* v. *Korsack*, 343 Mass. at 19. Nor do those findings suggest any other circumstances which would vitiate the presumption in this case. In light of the detailed nature of the master's report, we can assume that, had there been

anything so decisive in the evidence, the master would have included it in that report.

2. It is clear from the master's subsidiary findings that Bennett has acquired ownership of the locus by adverse possession. These findings establish that about sixty years ago Bennett's grandfather built a small garage and another small building on the locus. The garage "was used for the parking of automobiles by Mr. Bennett since the 1920's when he first purchased a motor vehicle. The ... small[er] building was used by Mr. Bennett's grandparents to keep a cow and later goats." Bennett acquired the property at 70A Commercial Street from his grandmother by deed dated February 9, 1952, and about that year razed the smaller building and planted grass on that plot. The master found that the grassy plot "would appear to a disinterested person to actually be part of Mr. Bennett's yard." It was not until November, 1972, when Papetsas had a survey made of the land covered by her deed, that any dispute arose as to the ownership of the locus—more than twenty years since Bennett had acquired 70A Commercial Street and about sixty years since his grandparents, his predecessors in title, had acquired that property. The master found that since "over sixty years ago ... Mr. Bennett and his predecessors in title have claimed the ownership of the ... [locus] and the buildings thereon, as well as openly occupied the same."

The subsidiary findings establish that Bennett and his "predecessors in title have had open, peaceable, continuous and exclusive possession of the [locus]." *LaChance* v. *First Natl. Bank & Trust Co.*, 301 Mass. 488, 492 (1938). These findings standing alone would justify (if not require) an inference that Bennett's possession was adverse under a claim of right. *Shoer* v. *Daffe*, 337 Mass. 420, 423–424 (1958). *Boutin* v. *Perreault*, 343 Mass. 329, 331–332 (1961). *Collins* v. *Cabral*, 348 Mass. 797, 798 (1965). Here even such a short step is unnecessary in view of the express finding that Bennett and his predecessors have claimed ownership in the locus for sixty years. *Bond* v.

*O'Gara*, 177 Mass. 139, 143–144 (1900). See the *Shoer* case, *supra*; the *Boutin* case, *supra*.

Accordingly, the judgments are reversed, and the cases are remanded to the Superior Court Department for further proceedings, upon appropriate amendment by Bennett of his pleadings in either or both actions, to determine (pursuant to part 1 of this opinion) the scope of Bennett's easement by prescription and to establish (pursuant to part 2 of this opinion) his title to the locus by adverse possession.

*So ordered.*