PRISCILLA SHAW *vs.* FRANK P. SOLARI & another.[1]

Plymouth.    March 9, 1979. — July 23, 1979.

Present: HALE, C.J., GRANT, & PERRETTA, JJ.

*Adverse Possession and Prescription.*

In an action to determine the plaintiff's rights to land which she
claimed by adverse possession, the plaintiff was not estopped from
denying the existence of a way where the strip of land in dispute
was neither in use nor staked out as a way when her predecessors
in title took title to the land and immediately cleared and used the
strip. [154-155]

In an action to determine the plaintiff's rights to land which she
claimed by adverse possession, there was ample support in the
record for the conclusion that possession of the land by the plain-
tiff's predecessors in title was actual and open, notorious and ad-
verse for a continuous period of twenty years, and asserted as a
claim of right. [155-156]

In an action to determine the plaintiff's rights to land which she
claimed by adverse possession, the plaintiff was not required to
prove continuous use of every segment of the strip of land in dis-
pute; the fact that the plaintiff's predecessors in title used various
portions of the strip for various purposes, all as they chose and that
their possession of the whole strip was exclusive indicated a claim
by them of ownership of the entire locus. [156-157]

CIVIL ACTION commenced in the Land Court on Septem-
ber 14, 1976.

The case was heard by *Sullivan, J.*

*Harry Terzian* for the defendants.

*Charles J. Hayes* for the plaintiff.

PERRETTA, J. The plaintiff, Shaw, commenced this ac-
tion in the Land Court to determine her rights to land
which she claimed by adverse possession through her
predecessors in title, the Kingstons, and to restrain Sola-

[1] Dorothy C. Solari, a tenant by the entirety of the disputed land,
was joined as a party in order that any relief granted would be com-
plete and final.

ri, the defendant, the holder of proper record title to the
land, from interfering with her use and enjoyment of that
land. The trial judge found that Shaw had established her
claim in a thirty-foot wide strip of land abutting her prop-
erty and running along its entire westerly boundary and
that she had this land free from any title or right of
Solari. We affirm the judgment.

In 1915 Shaw's land was one of many parcels located in
East Bridgewater and owned by C. W. Osborne and A.
McCordick; all were shown on a plan recorded with the
Plymouth registry of deeds. Her land, parcel 3, was
bounded on the east by parcel 4, and both of these lots
fronted on Central Street to the south. To the north both
lots abutted parcel 10; that lot and parcel 4 ultimately
were purchased by Solari. The plan indicated that the
land immediately west of parcel 3 was a thirty-foot wide
strip, which was designated as "Osborne Avenue" (strip),
and which was conveyed to Solari at the time of his pur-
chase in 1949. The southerly portion of this "avenue" is
at issue in this case. This strip separated parcel 3 from
parcel 2 and ran northerly from Central Street along the
westerly boundaries of parcels 3 and 10.[2] It is apparent
from the plan that the common grantors reserved this
strip as a means of access from Central Street to the back
lots for a time when more of the back land would be
subdivided and developed. However, these back parcels

[2]

were never developed and remained in their natural state and in common ownership until the time of this action.

In 1921 John Kingston purchased parcel 3, which was then wooded land. At that time Osborne Avenue had not been marked out or used as any type of access or way to the back land; however, the Kingstons were aware of the planned avenue and of the boundaries of the land, which did not include any portion of the disputed strip. Nonetheless, he cleared his lot as well as the strip and moved a house onto his land. Kingston made specific use of the strip from the time he took title to his land. A portion of this strip, from Central Street to the side door of his house, was used as a driveway from the 1930's to the present. It was always clearly defined as a driveway, first made of gravel and then, in the late 1950's, paved with asphalt. The remainder of the front portion of the strip, from the driveway to the easterly boundary of parcel 2, had been used by a tenant of the Kingstons as a parking area for nearly twenty-five years. The Kingstons used the back portion of the strip as a suburban lawn area. They planted grass and flowers behind the driveway and raked and tended this area. At one point, Mr. Kingston placed chicken coops in the back area of the strip. About 1951 he erected a picket fence on or near his back property line. The fence began in back of the Kingston house and ran westerly across their land and the strip almost to a large tree situated at the northeasterly corner of lot 2. From time to time over the years the Kingstons moved the fence, and it would be at various distances from the back property line, but never more than six to ten feet. Although Solari took title to his land in December of 1949, he did not assert his claim to the strip, which was part of his grant, or disturb the fence until May of 1976. Ida Kingston testified that the first indication of Solari's claim of right occurred when she looked out her window to see Solari dismantling so much of her fence as was on the strip. Upon inquiry, Solari

advised her that he was asserting his ownership rights to the land.

In August, 1976, Ida Kingston sold the land[3] to Shaw, conveying title to parcel 3 by a deed which also conveyed all of her "right, title and interest in and to [the thirty-foot strip of land] whether acquired by grant or by adverse possession." See *Shoer* v. *Daffe*, 337 Mass. 420, 423-424 (1958). Upon taking possession, Shaw reconstructed the fence which Solari had torn down. Solari again tore the fence down, drove over the land and parked his vehicle in the rear portion of the strip. That act by Solari precipitated this action.

The trial judge took a view of the land in question, heard evidence and made detailed findings of fact which were included in her decision; the evidence was reported. We shall not disturb the judge's findings unless we find them to be clearly erroneous in light of the evidence presented to her. *Marlow* v. *New Bedford*, 369 Mass. 501, 508 (1976). *Zuckerman* v. *Blakeley*, 3 Mass. App. Ct. 685, 686-687 (1975).

Shaw claims ownership rights in the thirty-foot wide strip abutting her land and running from Solari's property behind hers to Central Street. As Solari's land included parcels 4 and 10 as well as the strip to the west of the Kingstons' land, his land bounded the Kingstons' property on three sides. Solari had proper record title in fee simple to the strip. Although the strip was delineated on the recorded plan, it was never referred to in a deed into Kingston as part of that land or as an adjoining right of way. Shaw and her predecessors in title, the Kingstons, took record title to only that land described in their deeds. Thus, the issue becomes whether the Kingstons' and Shaw's exercise of dominion and control over the adjoining land from 1921 to 1976 was of such kind or degree that it resulted in their acquisition of a fee simple

[3] In 1945 John Kingston conveyed parcel 3 to himself and Ida Kingston as joint tenants by a deed which made no mention of the strip of land now in dispute. Ida Kingston acquired sole title to the land by right of survivorship upon her husband's death in 1968.

interest in the strip by adverse possession. See *Daley* v. *Daley*, 308 Mass. 293, 305-307 (1941).

On appeal Solari first argues that the Kingstons had a right of way in or an easement on Osborne Avenue and their use of this strip could not, therefore, as matter of law, be an adverse use. In making this argument, Solari relies on *Walter Kassuba Realty Corp.* v. *Akeson*, 359 Mass. 725 (1971), and cases cited therein, for the principle that when a grantor conveys land which adjoins a way, the grantor and the grantor's successors in title are estopped from denying the existence of the way as described in the plan referred to by the deed or as described in the deed itself. While this is indeed so, in *Kassuba, supra* at 727, the court relied upon *Wellwood* v. *Havrah Mishna Anshi Sphard Cemetery Corp.*, 254 Mass. 350, 355 (1926), which stated: "In cases where it has been held that the grant of a lot bounding on a way as shown on a plan estops the grantor and those claiming under him from denying the existence of the way for its entire length in either direction, it will usually appear that the way referred to is in use or actually staked out on the land." The way in the present case was neither in use nor staked out when Kingston took title to his land in 1921 and immediately cleared and used the strip. Shaw is not estopped from denying the existence of a way.[4]

Solari also argues that the Kingstons' use of the strip was not adverse because he permitted it until such time as he desired the land and asserted his rights. The record provides ample support for the conclusion that the Kingstons' possession was actual and open, notorious and adverse for a continuous period of twenty years, and assert-

[4] The trial judge correctly ruled that G. L. c. 183, § 58, was not decisive of the dispute, and a determination of its applicability unnecessary. That statute would have given the Kingstons a fee simple interest into the center of the strip if their westerly boundary were at issue and other facts were present. However, the Kingstons used the entire strip immediately upon taking title to their land, and their westerly property line has never been in contention. Consequently, title to the strip must be decided by adverse possession and not by § 58.

ed as a claim of right. *Truc* v. *Field,* 269 Mass. 524, 528-529 (1930). *LaChance* v. *First Natl. Bank & Trust Co.,* 301 Mass. 488, 490-491 (1938). *Holmes* v. *Johnson,* 324 Mass. 450, 453 (1949). *Shoer* v. *Daffe,* 337 Mass. at 422-424. "There was no recognition by the plaintiffs of authority in the defendant to prevent or permit continuance of the use. It is the nonrecognition of such authority at the time a use is made which determines whether it is adverse; and permissive use is inconsistent with adverse use. Restatement: Property § 458 [1944]. Am. Law of Property §§ 8.53-8.54 [Casner ed. 1952]." *Ryan* v. *Stavros,* 348 Mass. 251, 263 (1964). Their use of the land commenced in 1921, long before Solari purchased it in 1949, at which time it was readily apparent that their use was in contradiction to his ownership. Solari's claim that the use could not be adverse because the Kingstons believed the strip was a right of way and allowed others to use it is answered by *Flynn* v. *Korsack,* 343 Mass. 15, 18-19 (1961): "That the uncommunicated mental attitude of the possessor is irrelevant where his acts import an adverse character to his holding is shown by cases involving disputed boundaries where the possessor intends to hold without intending to deprive any other of what is rightfully his."

Solari next contends that Shaw failed to prove the continuous use of the back portion of the strip, the six-to-ten foot area between the fence and the back property line. He argues that the judge's finding of the placement of the chicken coops in this area for an unspecified period of time is an insufficient basis for a finding of disseisin of that land and, consequently, the finding of adverse possession fails as to the entire strip bounding the west side of parcel 3. In short, Solari demands that Shaw prove continuous use of every segment of this strip. This is unnecessary. The test is the degree of control exercised over the strip by the possessors, the Kingstons. "The actual use and enjoyment of the property as the average owner of similar property would use and enjoy it, so that

people residing in the neighborhood would be justified in regarding the possessor as exercising the exclusive dominion and control incident to ownership, establishes adverse possession in the absence of evidence that his possession is under a license or tenancy." 3 Am. Law of Property § 15.3, at 765-766 (1974). See *LaChance* v. *First Natl. Bank & Trust Co.*, 301 Mass. at 490-491; *Kershaw* v. *Zecchini*, 342 Mass. 318, 320 (1961). While a fence can be of importance in establishing the extent of the adverse use, it is but one factor in determining the degree of control. In the present case, the area under the Kingstons' actual control for over twenty years encompassed so much of the strip as bounded their property to the west. This area was cleared in 1921; the front portion was used for parking; part of the back portion was a suburban lawn area, and there were shrubs, bushes and trees behind that; the chicken coops were placed in the back portion of the strip; the fence ran from a point behind the house to the easterly boundary of parcel 2; it was later moved back closer to the rear property line; no one but the Kingstons, their tenant, and their guests used the strip. (At one time neighbors would occasionally use a path which led from the Kingstons' side door into woods on what is now Solari's land.) "It cannot be said as matter of law that these acts could not properly be the basis of a finding of disseisin." *Id.* The Kingstons used various portions of the strip for various purposes, all as they chose, and their possession of the whole strip was exclusive and indicative of a claim by them of ownership of the entire locus. See *Keith* v. *Kennard*, 222 Mass. 398, 400 (1916); *Phipps* v. *Crowell*, 224 Mass. 342, 343 (1916); *LaChance* v. *First Natl. Bank & Trust Co.*, supra; *Kershaw* v. *Zecchini*, supra; *Jones* v. *Gingras*, 3 Mass. App. Ct. 393, 398 (1975).

*Judgment affirmed.*