LAURETTA M. LEBEL vs. MELLIN G. NELSON.

No. 89-P-347.

Suffolk. May 22, 1990. - September 28, 1990.

Present: BROWN, KASS, & PORADA, JJ.

*Adverse Possession and Prescription. Real Property*, Littoral property.

In an action seeking a determination of the plaintiff's rights to land which she claimed by adverse possession, there was ample support in the record for the conclusion that the plaintiff and her husband (now deceased) had made nonpermissive use of the disputed area which was actual, open, notorious, exclusive, and adverse for twenty years; where such use of the land had already exceeded twenty years when the defendant bought the adjoining property, the plaintiff did not lose title to the disputed area by failing to assert her title at the time of the defendant's purchase; moreover, it was not necessary that the property be used for a single purpose for the entire statutory period. [301-302]

In an action in which the plaintiff succeeded in proving title by adverse possession of land abutting certain unused tidal flats on a river, her adverse possession also included littoral rights in the adjoining· tidal flats, where the record contained no evidence that at some earlier time the tidal flats bordering on the disputed upland area had been separately conveyed. [302-304]

CIVIL ACTION commenced in the Land Court Department on February 17, 1982.

The case was heard by *John E. Fenton, Jr., J.*

*Dennis P. Derrick* for the defendant.

*Robert V. Deiana* for the plaintiff.

KASS, J. As to whether Lauretta M. Lebel, the plaintiff, acquired the title in some 6,900 square feet of land in Danvers by adverse possession, we have no difficulty deciding, as did the Land Court judge, that she did. There is a collateral issue whether the adverse possession included littoral rights in adjoining tidal flats on the Danvers River. Here we differ with the Land Court judge and arrive at the conclusion that

adverse possession of land abutting tidal flats includes rights in those flats.

We have the benefit of careful, detailed, and lucid findings by the Land Court judge. Such findings, of course, are entitled to deference unless clearly erroneous. Mass.R.Civ.P. 52(a), 365 Mass. 816 (1974). *Norton* v. *West*, 8 Mass. App. Ct. 348, 350 (1979). The judge's findings are fully supported by the record; we summarize them.

Lebel and her husband (now deceased) acquired title to the property at Rear, 33 Bates Street, Danvers, on September 30, 1943, a parcel which included the house which they occupied as their residence. About a year later, the Lebels acquired an adjoining lot. Both parcels bordered on their easterly sides along the Danvers River. The Lebels were uncertain precisely where their southerly boundary line lay and, starting in 1944, they began to use the disputed area, which contains about 6,900 square feet. The prospect of an expansion by the defendant Nelson of a marina brought on the confrontation of the parties about who held title to the disputed area. Lebel brought an action under G. L. c. 231A asking a declaratory judgment.

The judge found that the Lebel family, from 1944 until the time of trial (1983), had cleared brush on the disputed area and maintained a lawn; had maintained a compost pile; stored boats and boating equipment; and parked cars. In 1945 or 1946, they had constructed a wooden sea wall and had extended it during the 1960's. In 1953, they constructed a horseshoe court which they used until the mid-1960's. They constructed a swing and slide set in the mid-1940's and used it until the mid-1950's. In the late 1940's, they constructed a duck house, later used for play and storage until its removal in 1970 or 1971. Until the late 1960's, the Lebels held family picnics on the disputed area.

1. *Adverse possession of the upland.* On the basis of the Lebels' wide variety of uses during a period of over thirty years, the judge found they had made nonpermissive use of the disputed area which was actual, open, notorious, exclusive, and adverse for twenty years. *Ryan* v. *Stavros*, 348

Mass. 251, 262 (1964). *Shaw* v. *Solari*, 8 Mass. App. Ct. 151, 155-156 (1979). The defendant emphasizes evidence from which contrary inferences could be drawn. The judge, however, was not bound to believe or construe the evidence as the defendant wished it to be believed or construed. That Lebel offered to buy the disputed area, for example, was not at all decisive. A party's willingness to avoid litigation by offering to buy the disputed property does not defeat a claim of adverse possession. See *Warren* v. *Bowdran*, 156 Mass. 280, 283-284 (1892). It is, in any event, the conduct of the claimant in regard to the use of the land, not the claimant's state of mind about title, which governs. See *Foot* v. *Bauman*, 333 Mass. 214, 217-218 (1955). In 1970, when the defendant Nelson bought the adjoining property, Lebel's nonpermissive, adverse, open, and notorious use had already exceeded twenty years. She had, therefore, acquired title to the disputed area. She did not lose it by failing to assert her claim at the time of Nelson's purchase. See *Ottavia* v. *Savarese*, 338 Mass. 330, 333-334 (1959).

Some of Lebel's uses were seasonal but seasonal uses may establish adverse possession. *Kershaw* v. *Zecchini*, 342 Mass. 318, 320-321 (1961). Some of the uses seem to have been for less than the statutory period. Apart from the fact that certain uses did span more than the necessary twenty consecutive years, for purposes of obtaining adverse possession it is not necessary that the property be used for a single purpose for the entire statutory period. See *LaChance* v. *First Natl. Bank & Trust Co.*, 301 Mass. 488, 489-492 (1938).

The judge's findings and ruling concerning Lebel's acquisition of title to the disputed area by adverse possession are soundly based in the record and the law. See *Lyon* v. *Parkinson*, 330 Mass. 374, 380 (1953); *Collins* v. *Cabral*, 348 Mass. 797, 797-798 (1965).

2. *Title to the tidal flats.* In a departure from English common law, the colonial ordinance of 1647[1] conferred upon

---

[1]See The Book of General Lawes and Libertyes at 50 (1649). The ordinance is sometimes referred to in the books as the "Colonial ordinance of 1641" (*Mayhew* v. *Norton*, 17 Pick. 357, 359 [1835]) or the "Colony Or-

owners of land adjoining tidal waters the ownership of the flats exposed by an ebbing tide to the low water mark.[2] *Boston Waterfront Dev. Corp.* v. *Commonwealth*, 378 Mass. 629, 635-636 (1979), and cases cited. That colonial ordinance became engrafted on the common law of Massachusetts. *Barker* v. *Bates*, 13 Pick. 255, 258 (1832). *Mayhew* v. *Norton*, 17 Pick. 357, 360 (1835). Owners of property on rivers which ebb and flow with the tides enjoy the same littoral rights as those bordering on the sea, i.e., they have title to the rivers' tidal flats, subject to the passage of boats. *Ashby* v. *Eastern R.R.*, 5 Met. 368, 370 (1842). *Tappan* v. *Boston Water Power Co.*, 157 Mass. 24, 26-27 (1892). The Danvers River is a tidal river.

Although an owner of tidal flats and adjoining upland may convey one without the other, *Mayhew* v. *Norton*, 17 Pick. at 360, the "presumption of law is, that the title to the flats follows that of the upland on which they lie, and proof of title to the upland establishes a title to the flats." *Porter* v. *Sullivan*, 7 Gray 441, 445 (1856). Separation of the upland and tidal flat was to be proved, not presumed. *Valentine* v. *Piper*, 22 Pick. 85, 94 (1839). Proof of title in the upland, including title acquired by disseisin, carries with it title in the flats unless there is evidence from which an affirmative intent to separate the two may be inferred. *Id.* at 93-94. The record contains no evidence that at some earlier time the tidal flats bordering on the disputed upland area had been separately conveyed.

Apart from the practical merits of not producing separate interests which are contrary to the norm and which would not be recorded in registries of deeds, there are principles of conveyancing which buttress the conclusion that acquisition of title to uplands by adverse possession ordinarily carries with it title to the bordering tidelands. When all the elements necessary to establish title by prescription are proved, a grant of land is presumed. *Truc* v. *Field*, 269 Mass. 524, 528-529

___

dinance of 1641-1647" (Whittlesley, Law of the Seashore, Tidewaters & Great Ponds in Massachusetts & Maine xxv [1932]).

[2]But not further than 100 rods.

(1930). A grant of upland, as we have seen, includes the accompanying tidal flats. In the instant case, no use was being made of the flats adjoining the upland. If the flats were actively used, e.g., for a wharf at which to tie up a vessel, by someone other than the person claiming adverse possession in the upland, the joinder of flats to upland through adverse possession is less clear. That, however, is not the case before us and we need not decide it.

The case is remanded to the Land Court to establish the bounds of the tidal flats appurtenant to the upland disputed area and for entry of an amended judgment declaring that, in addition to the upland, Lebel has title to those tidal flats.

*So ordered.*