NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

18-P-514                                    Appeals Court

   GARY MILLER & another[1] vs.  CHRISTOFFER ABRAMSON & another.[2]


                        No. 18-P-514.

     Middlesex.     January 11, 2019. - August 29, 2019.

          Present:  Massing, Desmond, & McDonough, JJ.


          Real Property, Adverse possession, Boundary.



     Civil action commenced in the Superior Court Department on
June 15, 2016.

     The case was heard by Thomas P. Billings, J.


     Jeffrey P. Allen (Katharin M. Unke Smith also present) for
the defendants.
     Leonard M. Davidson for the plaintiffs.


     McDONOUGH, J.  The defendants, Christoffer and Cheryl Marie

Abramson, appeal from a judgment declaring that the plaintiffs,

Arlene and Gary Miller, acquired by adverse possession a thin

slice of the Abramsons' land situated just across the parties'

_____

          [1] Arlene Miller.

          [2] Cheryl Marie Abramson.

shared lot line.  The Abramsons argue that the Millers' only
open and adverse use of the disputed area occurring continuously
for the required time period amounts to nothing more than basic
suburban landscaping -- mowing, fertilizing, and occasional
trimming of trees and shrubs.  The Abramsons claim that under
Massachusetts law, this sort of yard work is simply not enough
to satisfy the elements of adverse possession.  We disagree and
affirm.

Background.  The facts we recite are taken from the judge's
findings, made after a jury-waived trial, and are supplemented
by uncontroverted evidence in the record.[3]  The plaintiff Millers
live in a single-family home at 11 Fellsmere Road in Newton, on
a corner lot at the intersection with Ward Street.  The
defendant Abramsons live at 211 Ward Street in Newton.
Fellsmere Road dead-ends onto Ward Street.  As shown in the plan
of land we include as an appendix to this opinion, the back of
the Millers' property directly abuts one side line of the
Abramsons' lot.  The parties' shared lot line is straight,
running from Ward Street to the back of the Abramsons' property.
The area disputed by the parties forms a thin triangle, about
492 square feet in size, the base of which is along the

_____

[3] None of the judge's findings is clearly erroneous.  See
Kendall v. Selvaggio, 413 Mass. 619, 620 (1992).  Except as
discussed infra, the Abramsons do not claim otherwise.

Abramsons' back lot line and one side of which is along the parties' shared lot line.

The Millers' use and occupation of the disputed land was interrupted for purposes of adverse possession by June 15, 2016, when the Millers filed this action, in which the Abramsons counterclaimed.  See Pugatch v. Stoloff, 41 Mass. App. Ct. 536, 542 n.8 (1996) (complaint to establish title immediately interrupts adverse possession).  Accordingly, the Millers' goal at the parties' jury-waived trial was to prove their continuous use and occupation of the disputed area[4] over a twenty-year period prior to or ending in June 2016.[5]  See G. L. c. 260, § 21.

The Millers purchased their home in 1986 and moved in the following year.  At the time they moved in, there was a line of shrubs and small trees along one edge of the disputed triangle, shown as a dashed line in the appendix (i.e., along the side of the triangle closest to the Abramsons' house; not along the shared boundary).  This line of vegetation extended along the edge of the disputed area in a straight line from the Abramsons'

---

[4] The Millers do not rely on and did not present evidence of any predecessor's use of the disputed area.  Accordingly, our analysis must begin with the Millers' acquisition of the land.

[5] The Abramsons argue that the Millers' alleged adverse possession was interrupted seven months earlier, when the Abramsons first complained to the Millers about the encroachment.  The Millers do not dispute this, but the seven-month difference is immaterial in any event.

back boundary to the apex of the triangle, where it jogged slightly, then followed the parties' shared lot line the rest of the way to Ward Street.  The line of vegetation "formed a natural boundary between one yard and the next."  Until November 2015, when the Abramsons complained to the Millers that they were encroaching on the Abramsons' land, the Millers assumed this line of shrubbery represented the legal boundary between the two lots.

At the time of trial in October 2017, the assortment of vegetation found between the two homes showed signs of having being pruned on the Millers' side.  The shrubs and trees were also substantially larger and denser than when the Millers moved in.  Between 1987 and the trial date, some of the plants had died and some had been replaced, but most had grown to be taller than an adult person -- with some trees or shrubs reaching as high as the second story of the Millers' house, and one reaching the peak of the building.[6]

In 1987, when they first moved in, the Millers retained Santangelo Landscaping (Santangelo) to care for their lawn and plantings and to remove leaves.  Beginning in that year and in each year thereafter, a three-person crew from Santangelo

---

[6] The foliage screens the view between the two homes in the summer but not in the winter.

performed yard work at the Millers' property every week from April 1 through November 1 -- and in some years even later, depending on when the leaves fell. From 1987 through the present, a Santangelo crew mowed the lawn, following a spiral course starting from the perimeters and working inward.[7] The mowed area included the disputed triangle, inside of the line of vegetation. The landscaping crew also fertilized the lawn, exterminated pests as necessary, and trimmed the shrubs and trees forming the vegetative border.[8]

From when the Millers first moved in, neither the Abramsons nor their predecessors ever used the disputed area.[9] Moreover,

---

[7] Although not mentioned in the judge's findings, Arlene Miller testified without challenge that Santangelo's lawn mowers were loud enough to wake napping children in the days when the Millers' now-adult children were young.

[8] In approximately 1997 or 1998, the Millers installed a kidney-shaped patio, related lighting and plantings, and a new sprinkler system, all of which occupies a significant portion of the disputed area. The Abramsons agree that installation of the permanent patio would meet the required elements of adverse possession if maintained for twenty years or more. The Millers do not claim that the patio had been in existence for the required twenty years prior to June 2016. However, for adverse possession purposes, the period of time after the patio was installed is properly added to the period when the area under it was maintained as a lawn. See LaChance v. First Nat'l Bank & Trust Co. of Greenfield, 301 Mass. 488, 489-491 (1938) (adverse possession claimant need not establish a single use for the requisite time period; various uses may be "tacked together"); Lebel v. Nelson, 29 Mass. App. Ct. 300, 302 (1990).

[9] The Abramsons purchased their home in November 2014.

the Millers never asked or received permission to use the disputed area.

Discussion. Although we accept the judge's factual findings unless clearly erroneous, "we scrutinize without deference the legal standard which the judge applied to the facts." Kendall v. Selvaggio, 413 Mass. 619, 621 (1992). "Title by adverse possession can be acquired only by proof of nonpermissive use which is actual, open, notorious, exclusive and adverse for twenty years." Id. at 621-622, quoting Ryan v. Stavros, 348 Mass. 251, 262 (1964). "Acts of possession which are 'few, intermittent and equivocal' do not constitute adverse possession." Kendall, supra at 624, quoting Parker v. Parker, 1 Allen 245, 247 (1861).

1. Finding as to the tree and shrub line. As a threshold matter, the Abramsons argue that the judge made a clear error in finding that, for more than twenty years, the line of vegetation between the parties' houses "formed a natural boundary between one yard and the next, signaling clearly to the adjoining neighbors that the Millers claimed what is now the disputed area, as their own." More specifically, the Abramsons claim that because the parties do not know who first installed the trees and shrubbery, it is impossible to know whether the Abramsons' predecessors regarded it as identifying a boundary between the two yards.

As the Abramsons acknowledge, however, this finding is only partially factual, and was included among the judge's legal conclusions. We see no error (clear or otherwise) in the first clause of the judge's statement (i.e., that the tree and shrub line formed a "natural boundary"). This proposition is readily supported by the testimony at trial. The next clause, about what the vegetative barrier "signal[ed]," is not a factual finding -- it is, instead, a legal conclusion about the significance of a found fact.

The judge made no comment here about the actual state of mind of the Abramsons or their predecessors (or even the Millers) at any particular time, which is not a relevant inquiry in any event. See Totman v. Malloy, 431 Mass. 143, 145 (2000) ("The guiding principle behind the elements of adverse possession is not to ascertain the intent or state of mind of the adverse claimant, but rather to provide notice to the true owner, allowing for the legal vindication of property rights"). See also Kendall, 413 Mass. at 622-624. The point is simply that the existence of the vegetative boundary allowed for easy identification of what land was being openly used and possessed by the Millers, where the Millers' landscaper maintained the lawn and plantings only on one side of it. This bolsters the judge's ultimate conclusion that the Millers' use of the land was sufficiently open and notorious so as to put the Abramsons

and their predecessors on notice as to the existence and extent of the Millers' claim.[10]  See Lawrence v. Concord, 439 Mass. 416, 421 (2003) ("The purpose of the requirement of 'open and notorious' use is to place the true owner 'on notice of the hostile activity of the possession so that he, the owner, may have an opportunity to take steps to vindicate his rights by legal action'" [citation omitted]).  We see no clear error in the judge's factual finding, and no legal error in his application of the law as to the effect of the continuously existing boundary.

2.  Sufficiency of yard maintenance.  The bulk of the Abramsons' argument is directed to their contention that

---

[10] That the line of vegetation formed a "natural boundary" between the lawns also lends credence to the testimony establishing the Millers' exclusive use.  In MacDonald v. McGillvary, 35 Mass. App. Ct. 902, 903 (1993), a wooden fence existing between the parties' yards fell down and was absent for a year or two, before being replaced with a chain-link fence. The absence of a barrier for a period of time did not, however, automatically interrupt the McGillvarys' period of adverse possession of the land.  It was only "one factor to be considered in determining the degree of the McGillvarys' control over the area."  Id. at 904.  Moreover, "the presence on the ground of the remains of the wooden fence during the one or two-year absence of a fence made it most unlikely that, during that period, the McGillvarys ceased to take care of the entire disputed area and that the MacDonalds' lawn care extended into the disputed area."  Id.  Similarly, in this case, the fact that a natural but penetrable barrier has existed between the parties' lawns during the entire period of adverse possession is a relevant fact tending to support the Millers' regular and exclusive maintenance of the disputed area.

"lawn/brush maintenance is wholly insufficient to establish adverse possession under Massachusetts law."  This proposition is not correct.  Our cases do not hold that lawn mowing and other yard work is insufficient in all instances to establish ownership.  As the trial judge aptly put it, the proper inquiry is "more nuanced than this."

"The nature and the extent of occupancy required to establish a right by adverse possession vary with the character of the land, the purposes for which it is adapted, and the uses to which it has been put."  LaChance v. First Nat'l Bank & Trust Co. of Greenfield, 301 Mass. 488, 490 (1938).  Moreover, "[e]vidence insufficient to establish exclusive possession of a tract of vacant land in the country might be adequate proof of such possession of a lot in the center of a large city."  Id.

In other words, the context supplied by the surrounding landscape is significant in an adverse possession case -- a use that is sufficient to establish ownership in a densely populated neighborhood may be inadequate in an isolated, wooded setting. Establishing title requires only that "the possessor must use and enjoy the property continuously for the required period as the average owner would use it, without the consent of the true owner and therefore in actual hostility to [the true owner] irrespective of the possessor's actual state of mind or intent." Kendall, 413 Mass. at 624, quoting Ottavia v. Savarese, 338

Mass. 330, 333 (1959).  Accordingly, in MacDonald v. McGillvary, 35 Mass. App. Ct. 902, 904 (1993), adverse possession was found where the claimant's use of the land "consisted of little more than maintenance of a suburban lawn."  See Shoer v. Daffe, 337 Mass. 420, 423 (1958) (where possessor "planted [land] to lawn" and surrounded it with a hedge, possessor's "use was that ordinarily made only by an owner").[11]

In this case, the findings plainly demonstrated not only that the Millers engaged in the typical suburban lawn care found to give rise to ownership in MacDonald, 35 Mass. App. Ct. at 904, but also that this activity occurred on a continuous basis -- with a commercial landscaper conducting the activity in plain sight once per week from April through November for more than

---

[11] The Abramsons rely on Peck v. Bigelow, 34 Mass. App. Ct. 551, 553, 556-557 (1993), where this court held various uses -- including mowing of a thirty-by-thirty foot area on which the claimant kept furnishings such as a picnic table and lounge chairs; clotheslines; a rope swing; a sandbox; a henhouse; lumber and compost piles; and occasional tree cutting and pruning along two street-adjacent sides of the lot -- did not amount to "actual" possession over the lot.  Peck, however, was decided prior to MacDonald, 35 Mass. App. Ct. at 904, and involved a claim of adverse possession over the entirety of "an unimproved, largely overgrown" 6,720 square foot lot that was described as "rugged" -- not, as in the instant case, a claim over a portion an improved house lot with its own yard.  Peck, supra at 551, 557.  Moreover, in Peck, although the evidence was insufficient to support the element of actual use, it was also insufficient to establish the exclusivity requirement of adverse possession.  Id. at 557.  In contrast, here there was no showing that anyone but the Millers ever used the disputed land during the relevant time period.

twenty years.  The evidence also established that the Millers treated the larger trees and shrubs along one side of the disputed area as their own, with regular pruning.  Moreover, as discussed above, this line of trees and shrubs formed a natural boundary demarcating the contours of the Millers' yard.[12]  As this court has stated,

> "The actual use and enjoyment of the property as the average owner of similar property would use and enjoy it, so that people residing in the neighborhood would be justified in regarding the possessor as exercising the exclusive dominion and control incident to ownership, establishes adverse possession in the absence of evidence that his possession is under a license or tenancy."

Shaw v. Solari, 8 Mass. App. Ct. 151, 156-157 (1979), quoting 3 Am. Law of Property § 15.3, at 765-766 (1974).

There is nothing about the way in which the Millers used the disputed land that precludes a finding of adverse possession.  To the contrary, the evidence showed that the Millers used the land precisely as the average owner of similar property would use it in a suburban neighborhood populated with single-family homes.  The character of the land includes the existence of the tree and shrub line, which, during the relevant time, had the effect of enclosing the area the Millers

---

[12] This is not a case where lawn mowing was unaccompanied by some sort of barrier or boundary indicating the shared perimeter of two adjacent lawns; nor is it a case of one neighbor doing the other an occasional favor by mowing the abutter's grass at the same time as caring for one's own.

consistently used as their yard.  Accordingly, in the context presented here, we see no error in the judge's conclusion that the Millers' relatively passive use of the disputed land was sufficient to satisfy the elements of adverse possession.  See LaChance, 301 Mass. at 491 (adverse possession established by acts of control and dominion "similar to those which are usually and ordinarily associated with ownership").

Judgment affirmed.

Appendix
(adapted from trial exhibit no. 2)



Fellsmere     Road

Ward

Street

Lot 32
Miller

house

patio

Disputed
Area

line of shrubs
& small trees

Lot 33
Abramson