WALTER L. CURTIS *vs.* ANNIE E. BROWN & others.

Plymouth.    October 8, 1914. — October 24, 1914.

Present: RUGG, C. J., LORING, SHELDON, DE COURCY, & CROSBY, JJ.

*Land Court,* Findings of judge.   *Adverse Possession.   Disseisin.   Seashore.*

The finding of a judge of the Land Court upon an issue of fact in a case where no
    trial by jury was claimed is final.
Upon a petition in the Land Court for registration of title, where the respondents
    claimed title by adverse possession to a tract of uncultivated upland beach,
    which adjoined a marsh owned by the respondents and was used by them during
    a period of forty years for drying sea moss, it appeared that "mossing" was
    carried on by the respondents from May to September in each of the years and
    required a stretch of clean, dry and well protected sand, that the respondents
    staked out the beds over which they spread the moss to dry and held their loca-
    tions with tenacity, that their occupation was exclusive while it lasted and that
    they came back each year to the same locations.   No trial by jury was claimed,
    and the judge of the Land Court found on evidence not reported that the occupa-
    tion of the respondents was clearly permissive and that no claim to hostile occu-
    pation, as of right, ever was brought home to the owners of the record title until
    ten years before the filing of the petition.   *Held,* that, as the respondents had
    failed to establish a possession that was adverse and exclusive, it was unneces-
    sary to determine whether an occupation of a portion of the uncultivated upland
    beach only from May to September of each year would have been sufficiently
    continuous to create a title by adverse possession, if the other necessary ele-
    ments of such possession had existed.

DE COURCY, J.   This is a petition filed in the Land Court to
register the title to certain lands lying between the Second and
Third Cliffs in Scituate, and extending in a long strip of upland
beach between the sea and the two parcels known as the "Thomas
Jenkins Marsh" and the "Coleman Jenkins Meadow." The
respondents Brown and Supple, owners of the "Thomas Jenkins
Marsh," accepted the decision of the Land Court. The excep-
tions of the respondents Curran (hereinafter referred to as the
respondents) involve only the southerly part of the land de-
scribed in the petition, namely, a portion lying in front of the
old "Coleman Jenkins Meadow," now owned by Patrick Curran,
one of the respondents. The record title to the beach in contro-
versy is in the petitioner.

The only question raised by the exceptions and now argued is whether the respondents have acquired title to this disputed upland beach by adverse possession. The answer depends entirely upon the legal effect of the mossing, which is dealt with in the decision of the Land Court * as follows: "The Curran claim is strongly presented. They have been occupying the shore in front of their marsh for mossing for forty years, and in 1903 purchased the marsh by the deeds above noted. Their record title, even under the deed which purported to bound by the beach, cannot, however, be tacked to their occupation. It did not in fact carry to low water mark, and their predecessor Manson had expressly disclaimed title to the upland beach where the moss beds were, and admitted Bailey Vinal's ownership of it. There remains to them only the legal effect of the mossing. Bailey Vinal had asserted his authority on portions of this strip, but none of the Currans ever paid rent to him or any one else until 1901. Mossing is carried on from May to September, and requires a stretch of clean, dry and well protected sand with water near by for washing the moss. The mossers stake out the beds over which they spread the moss to dry, and whenever a new mosser appears there is apt to be a row. They hold their locations with tenacity. The occupation is exclusive while it lasts, and they come back each year to the same location. Whether such occupation is sufficiently continuous to warrant a finding of a title, or an easement, acquired thereby by adverse possession, has not, so far as I know, been decided. Apparently the only mossing beaches on the shore are now in litigations in this court. The chief difficulty that I find in the problem is that of the element of claim of title adverse to that of the owner. I fail to find that element in this case. The Brown and Supple occupation seems to me to have been clearly permissive rather than submissive. I find nothing to warrant a finding that a claim to hostile occupation, as of right, was ever brought home to the owners of the record title prior to 1901. Such rents as were paid were nominal. Bailey Vinal could see the whole of the upland beach from his homestead on the cliff, and he dominated the whole of it as far south as the large wash hole in the creek on the Merritt line. There was nothing, so far

---

* By *Davis*, J.

as the evidence shows, to indicate that the Curran occupation differed from that of any of their neighbors."

In order to constitute a disseisin of the true owner it was essential, among other elements, that the possession of the respondents should be adverse and exclusive. As above appears, the finding of the Land Court was that the Curran occupation did not differ from that of their neighbors; in other words, that it was clearly permissive; and that no claim to hostile occupation, as of right, ever was brought home to the owners of the record title before 1901.* The evidence on which these findings are based is not before us. The nature of the acts of the respondents on the disputed land, and the purposes for which they were done, were questions of fact and inferences of fact. *Coburn* v. *Hollis,* 3 Met. 125. *Slater* v. *Jepherson,* 6 Cush. 129. *Simmons* v. *Nahant,* 3 Allen, 316. *Morrison* v. *Chapin,* 97 Mass. 72. And the finding of the Land Court on these issues of fact is final, as no trial by jury was claimed. R. L. c. 128, § 13, as amended by St. 1910, c. 560, § 1.

The finding of the judge of the Land Court that the possession of the respondents was not adverse is consistent with and strengthened by the subsidiary findings. In the beginning their occupation clearly was permissive, and the nature of the possession, for only five months of the year, was not such that the owner must be presumed to know that it was adverse to his title. *Proprietors of Kennebeck Purchase* v. *Springer,* 4 Mass. 416. Nor does it appear that their use of a portion of the uncultivated upland beach for moss beds was exclusive in the sense necessary to establish a title by disseisin. Even if we disregard the presence of summer cottages, the possession apparently was no better defined than that disclosed in *Litchfield* v. *Ferguson,* 141 Mass. 97, where sea weed was taken from an open beach, or in cases like *Parker* v. *Parker,* 1 Allen, 245, where wood was cut from unenclosed wild land. And see *White* v. *Shippee,* 216 Mass. 23.

As the respondents failed to establish a possession that was adverse and exclusive, it is unnecessary to determine whether an occupation only from May to September of each year was

---

* The petition for registration of title was filed on May 6, 1911.

sufficiently continuous to create a title by adverse possession, assuming that the other necessary elements were present.

*Exceptions overruled.*

*H. H. Pratt & W. J. Cronin,* for the respondents Curran, submitted a brief.

*H. W. Williams,* for the petitioner.