HERMAN MERRIAM, Appellant-Respondent, *v.* 352 WEST 42ND STREET CORP., Respondent-Appellant; GLICKMAN CORPORATION OF NEVADA et al., Intervenors-Defendants-Respondents-Appellants.

First Department, November 14, 1961.
(As republished December 28, 1961.)

*Irving F. Cohen* for appellant-respondent.

*Sanford Solarz* of counsel (*John J. Boyle* and *John C. O'Malley* with him on the brief), for respondents-appellants.

BREITEL, J. P. Plaintiff claims an easement by prescription over lands owned by defendant. Special Term held that such an easement exists but only for as long as plaintiff's building

remains in its present state and no substantial building is erected on defendant's land. The parties have cross-appealed, plaintiff to eliminate the qualification of the easement and defendant to eliminate the easement entirely.

The parties are adjoining landowners on the west side of Manhattan. Plaintiff's lot fronts on Ninth Avenue and the allegedly servient estate owned by defendant fronts on 43rd Street. Defendant's lot adjoins plaintiff's along the full length of plaintiff's rear lot line. For many decades the adjoining lands had located upon them four-story brick apartment buildings with open rear yards. The level, however, of the two yards was not the same. There was a difference of five or more feet. Plaintiff's building had fire escapes at the rear end, because the yard was depressed and enclosed by buildings on both sides, an iron stairway and gate were constructed at the top leading to the rear yard of defendant's premises.

This last had been the situation for many years. In the event of fire, which never occurred, the occupants and tenants of plaintiff's building could have fled the premises by use of the stairway, the gate, and defendant's rear yard. Access to 43rd Street could have been gained by passing through the open corridors on the ground floor of defendant's building. The iron stairway and gate constituted an open condition between the lands and none could claim ignorance of their existence.

After 1956, when defendant acquired its land, the old building on defendant's land was demolished, and the vacated land, together with adjoining parcels, has since been used as a leased parking lot. Defendant's tenant built a wall to prevent automobiles parked on its land from falling into the declivity. This wall extended along the border of plaintiff's land. In building it, defendant's tenant removed the gate. The iron stairway thereupon simply led to a wall which was not readily surmountable. In consequence the City authorities placed a violation on plaintiff's building because his fire escapes and means of egress no longer provided exits in case of fire.*

Plaintiff very frankly by his pleading, his proof, and his argument concedes that the fire violation is the nub of his problem. To bolster the claim of easement, however, he sought

---

* A temporary injunction had been granted at Special Term prior to the trial requiring defendant to make a breach in its wall so that plaintiff and the occupants of his premises would have access in case of fire. This injunction was contemptuously ignored by defendant. However, when the Trial Justice learned of this he saw to it that during the trial defendant breached the wall, and the opening presumably has been maintained until now.

to show user over the years by a janitress of the former owner, who entered the rear yard once or twice a week from 1938 to 1947 to clean it. In so doing, she walked through defendant's building and used the gate and ladder. She lived in plaintiff's building and could have entered the yard without passing over defendant's land, but she did so to avoid walking through the store located on the main floor of plaintiff's building. After plaintiff purchased the premises in 1947 he also used the appurtenances and defendant's yard two or three times a year to repair the gate and to make deliveries of merchandise which he sold to the occupants of defendant's premises. The janitress, no longer employed as such, occasionally used the same route to retrieve clothes which had dropped from her clothesline.

It is evident that an easement in favor of plaintiff, as circumscribed by the trial court, would confer a great benefit upon plaintiff and do little or no harm to defendant. However, in order to support either a perpetual easement or a limited one the traditionally essential conditions to support such an easement must be present. For the reasons that will appear, the conditions are lacking in this case and the judgment in favor of plaintiff must be reversed and the complaint dismissed.

The claimed use by the janitress, and later by plaintiff when he became the owner, over defendant's yard falls far short of the kind of continuous adverse user upon which an easement by prescription may be based. It is not every use of another's land that is adverse or against which the owner is required, at the risk of subjecting himself to an easement, to take action immediately either by way of self-help or at law. Neither in the old days nor today is neighborliness to be avoided upon pain of impairing title to one's property. The janitress' passage over defendant's land, while having some repetitiveness, did not have any of the suggestions of adverseness upon which prescriptive rights might be based. (*Panzica* v. *Galasso,* 285 App. Div. 859, affd. 309 N. Y. 978; *Offenhartz* v. *Heinsohn,* 30 Misc 2d 693 [EAGER, J.]; *Norwick* v. *Edelman,* 204 Misc. 915, 917; *Berke* v. *Lang,* 202 Misc. 1108, 1110–1112.)

The period over which the user by the janitress occurred amounted to 9 years, and is not sufficient, alone, to satisfy the statutory requirement of 15 years (Civ. Prac. Act, § 34). Plaintiff's own use to repair the gate and to make deliveries on defendant's premises two or three times a year, which plaintiff seeks to " tack " onto the use by the janitress, is even less significant. Such infrequent use neither impinged upon the use of defendant's land by its owners nor brought home to such owners the fact of any trespass upon their land.

More important to the case is the open and "notorious" existence of the iron ladder which advertised to any who could see that plaintiff or his predecessors in title had built the appurtenance for an exit over defendant's land. The structure, then, was an open continuing declaration that plaintiff and the occupants on his land would use defendant's land in the event of fire or otherwise. The fact is, however, no fire occurred and there was never such use, except for what has been described above. The question, then, is whether such declaration, coupled with evident potentiality for adverse user is sufficient to create an easement.

If one looks but to the traditional statements of the rules it is evident that easements may not be created merely by the declaration or threat of user. Instead there must be actual use in addition to which the use must be open, notorious and adverse.

Looking beyond the mere statement of the rules to the manner in which a prescriptive easement arises, it becomes evident that mere declaration or threat of user is and should be insufficient to create the easement. In order for a use to be adverse it must be wrongful (*Hammond* v. *Zehner*, 21 N. Y. 118; 3 Powell, Real Property, pp. 447–448; 5 Restatement, Property, § 458 and *Comments* to Clauses [a] and [b], incl. Illus. 1 and 5). Indeed, it has been said that it must be wrongful in the sense of being actionable at law for a wrong done (*Moore* v. *Day*, 199 App. Div. 76, 86, affd. 235 N. Y. 554; 4 Tiffany, Real Property [3d ed.], § 1201; 1 Thompson, Real Property [Perm. ed.], p. 693). This suggests the key to the problem. If a user, or any other condition, is to threaten an owner with the imposition of prescriptive rights on his property there must be something that he could do about it before the prescriptive rights have vested. His remedies may lie in the area of self-help or may require a lawsuit.*

* The rule would be the same in England, although the "anomaly" of the easement of light and air by prescription would provide a notable exception (12 Halsbury's Laws of England [3d ed.], § 1209). As to the easement of light and air, see *Colls* v. *Home and Colonial Stores* ([1904] A. C. 179, 73 L. J. [Ch.] 484); *Moore* v. *Rawson* (3 B. & C. 332, 107 Eng. Rep. [Reprints] 756). Of course no such easement by prescription is recognized in the United States (3 Powell, Real Property, p. 448). If there were such an easement and since it involves a rule of reason or nuisance concept, the analogy might have offered an opportunity to do exactly what Special Term endeavored to do. But even this would be dubious since the prescriptive easement of light and air, where it is recognized, is not one that has shown much judicial growth (*Webb* v. *Bird*, 10 Com. B. Rep. [N. S.] 268, 30 L. J. [C. P.] 384, affd. 13 Com. B. Rep. [N. S.] 841, 31 L. J. [C. P.] 335; *Sturges* v. *Bridgman*, 11 Ch. D. 852, 48 L. J. [Ch.] 785).

Applying the test to this case it becomes immediately evident that there was nothing defendant or its predecessor could have done to eliminate the notorious condition. The iron ladder was on plaintiff's land. The fire escapes on plaintiff's building were, of course, of no concern to defendant or its predecessor. Defendant had no right to go upon plaintiff's land and remove the ladder. Defendant could not have brought an action at law for a wrong done because, so far as appeared, plaintiff had not yet used defendant's land. No fire had yet occurred, and, of course, it should not be assumed that even one or a few uses would necessarily create a prescriptive easement. Nor was defendant or its predecessor obligated to put up signs to make it clear that it objected to a use which apparently had not yet occurred. In short, a wrong may have been threatened, but no wrong had yet occurred. Consequently, because of the absence of any apparent user, let alone an adverse user, on defendant's land, plaintiff has never acquired any prescriptive rights.

Of course, plaintiff and the janitress did, infrequently, come upon defendant's land, and conceivably, defendant could have barred such entry as a trespass, provided defendant was aware of it. Also, conceivably the ladder and gate were sufficient to put defendant to a duty of inquiry to discover any such actual user. But it is clear under the circumstances here present that little short of a year-long vigil at the gate would have produced sufficient evidence of actual user. Such extreme measures for the protection of real property rights cannot rationally be required. Whether in a large city or in the open countryside it cannot be incumbent upon landowners to patrol constantly their borders or otherwise guard their land on suspicion that harmless intrusions, such as here involved, will jeopardize their titles (cf. *Butterworth* v. *Crawford,* 46 N. Y. 349; *Treadwell* v. *Inslee,* 120 N. Y. 458, 465; *Historic Estates* v. *United Paper Board Co.,* 260 App. Div. 344, 348, affd. 285 N. Y. 658; *Offenhartz* v. *Heinsohn,* 30 Misc 2d 693, *supra*; *Wilson* v. *Goodnow,* 98 N. H. 110; *Di Girolamo* v. *Philadelphia Gun Club,* 371 Pa. 40).

Because of the basis upon which the case turns it is not necessary to determine whether plaintiff was entitled to " tack " the several alleged adverse users under the principles discussed in *Belotti* v. *Bickhardt* (228 N. Y. 296). While it is unfortunate that the parties did not see fit to rest their rights upon the practical adjustment effected by Special Term, defendant is entitled to an adjudication in accordance with the rules of law and the

policies upon which they rest. Plaintiff, however, in a court of equity, is entitled to a reasonable stay of execution.

Accordingly, the judgment in favor of plaintiff against defendant should be reversed, on the law and on the facts, and the complaint dismissed, without costs to either party, with execution stayed for 90 days from service of an order herein with notice of entry.

McNALLY, STEVENS, EAGER and STEUER, JJ., concur.

Judgment in favor of plaintiff against defendant unanimously reversed, on the law and on the facts, and the complaint dismissed, without costs to either party, with execution stayed for 90 days from service of an order herein with notice of entry. Settle order on notice.