BOSTON SEAMAN'S FRIEND SOCIETY, INC. *vs.* RIFKIN
MANAGEMENT, INC.

Suffolk.    September 20, 1984. — January 25, 1985.

Present: GREANEY, C.J., GRANT, & PERRETTA, JJ.

*Adverse Possession and Prescription.*

In an action seeking a declaration of the plaintiff's rights in a parking lot lo-
cated between a building owned by the plaintiff and a building owned
by the defendant, and an injunction against the defendant's use of the
parking lot, the fact that the defendant and its predecessor in title had
used the lot for over twenty years did not establish a prescriptive right
to such use, where the defendant and its predecessor in title had used
the lot with the permission of the lessee of the plaintiff's predecessor
in title. [251-252]

CIVIL ACTION commenced in the Land Court Department
on January 12, 1981.

The case was heard by *John E. Fenton, Jr.,* J., on a motion
for summary judgment.

*Stuart DeBard* for the plaintiff.

*Joan A. Lukey* for the defendant.

PERRETTA, J. In 1981 the plaintiff, Boston Seaman's Friend
Society, Inc. (Seaman's), brought an action in the Land Court
against the defendant, Rifkin Management, Inc. (Rifkin), under
G. L. cc. 185 and 231A, seeking a declaration of its rights in
a certain piece of land and an injunction against Rifkin's use
of that land. Although Rifkin, and its predecessor in title,
Majestic Entertainment and Realty Company (Majestic), had
used the land with the permission of the lessee of Seaman's
predecessor in title, it claimed a prescriptive easement in it
under G. L. c. 187, § 2. On Seaman's appeal from summary
judgment in Rifkin's favor, the question before us is whether
the undisputed facts sufficiently show use of the premises by

Rifkin in a manner which would constitute adequate notice to the lessors-owners that they should assert their rights to their property. We reverse.

I. *The Undisputed Facts.*

Certain statements in the trial judge's memorandum of decision give indication that, rather than reciting the undisputed facts as he gleaned them from the pleadings, affidavits and attached exhibits, depositions, and answers to interrogatories, he may well have made findings on certain disputed facts. Although fact finding has no place on a motion for summary judgment, see *Attorney Gen.* v. *Bailey,* 386 Mass. 367, 370, cert. denied, 459 U.S. 970 (1982); *Lawson* v. *Rollins Burdick Hunter of Mass., Inc., post* 903, 906 (1984), we need not concern ourselves with the matter because our decision rests upon clearly undisputed facts which are as follows.

a. *Chain of Title.* This controversy centers on the use of a paved triangular-shaped parking lot (locus) situated between two buildings located on Church Street in Boston. One of the buildings is owned by Seaman's and the other by Rifkin.

From February 23, 1956, to December 28, 1956, title to the land (including the locus) presently owned by Seaman's was in Sumner L. and Samuel W. Poorvu, as tenants in common, and later as trustees from December 28, 1956, to December 27, 1976. On the latter date their lessee, Columbia Pictures Corporation (Columbia), exercised its option to purchase in accordance with the lease agreement between them. On January 16, 1979, Columbia conveyed the property to Standard 45 Realty Trust, and Seaman's acquired title on July 26, 1979.

Majestic took title to the adjacent land and building on October 14, 1946, and conveyed it to Rifkin on February 27, 1973.

b. *The Lease.* On May 22, 1956, the Poorvus and Columbia signed a lease agreement which, because of building construction and renovations, was not to be effective until such time as the premises were deemed "ready for occupancy." The effective date of the lease was subsequently set as January 1, 1957.

The lease was for a term of twenty years with nine successive options to extend, one for a term of ten years and eight for five-year terms. There was also an option to purchase at the end of the twentieth lease year, which Columbia exercised. Among the many provisions of the lease, there are two which Seaman's claims are here pertinent. The first of these two clauses allowed Columbia "to make such alterations, additions, or improvements . . . in or to the leased premises as it shall consider necessary or desirable for the conduct, improvement, or expansion of its business. . . ." The second clause in issue provided that Columbia was free "to sublet the leased premises or any part thereof without the consent of Lessors. . . ." The Poorvus, as lessors, had the right to enter upon the leased premises for purposes of inspecting the same at reasonable times.

c. *Use of the Locus.* At all times here material, Julian F. Rifkin was the president of Rifkin and a principal officer of (or otherwise closely associated with) Majestic.[1] Between 1946 and 1955, before the locus was improved, Rifkin's employees used part of the locus for access to the cellar and furnace room of the Rifkin building.

Some time in 1954 or 1955, Isadore Harry Rogovin (Rogovin), as the New England division manager for Columbia, moved into the building (now Seaman's) on the premises adjoining those of Rifkin. Columbia sold or rented films to Rifkin and Majestic, both of which operated theaters.

No later than some time in 1955, Julian Rifkin and Rogovin agreed to share the cost of paving and maintaining the space between their buildings (the locus) so that it could be used as a parking lot by their respective employees and invitees. Neither of the men knew where the boundary line between their properties lay, nor did either care.

Once improved, the locus was used by Rifkin's employees and invitees to park their cars near its building and in the center of the lot. Columbia's employees and invitees used the lot in

---

[1] For this reason, our description of the use of the locus by "Rifkin" includes the use by its predecessor in title, Majestic.

an identical manner.[2] When the lot was crowded and cars blocked egress from the locus to the street, their owners would move them upon request.

Julian Rifkin, because of his theater operations, was familiar with snow-plowing services, and he made such arrangements for the lot whenever necessary. Columbia and Rifkin maintained a friendly relationship throughout the years.

When Seaman's acquired title to the property in 1979, it believed that Rifkin owned a sizeable portion of the locus. This mistaken belief was the result of an error by a surveyor who had been engaged by Seaman's. When and how the error became apparent and why a relationship between the owners of the adjoining properties did not continue are unimportant.

II. *Discussion.*

Under G. L. c. 187, § 2, one may acquire a prescriptive easement upon the land of another by use of that land in a manner which is open, notorious, adverse to the owner, and continuous for a period of at least twenty years. See *Tucker v. Poch,* 321 Mass. 321, 323 (1947); *Ryan v. Stavros,* 348 Mass. 251, 263 (1964). As stated in *Ottavia v. Savarese,* 338 Mass. 330, 333 (1959), "[T]he purpose of the various requirements of adverse possession . . . is to put . . . [the owner] on notice of the hostile activity of the possession so that . . . the owner may have an opportunity to take steps to vindicate his rights by legal action."

Seaman's argues that Rifkin's use of the land during the period of Columbia's tenancy cannot be described as "notorious." On the undisputed facts as they presently appear, we agree. "The extent of openness and notoriety necessary for the acquirement of title by adverse use varies with the character of the land." *Tinker v. Bessel,* 213 Mass. 74, 76 (1912). See also *Curtis v. Brown,* 219 Mass. 157, 159 (1914). It is clear from a reading of the lease agreement that the Poorvus and

---

[2] The cars were not marked in any fashion which would serve to distinguish them as belonging to the employees and invitees of Rifkin as opposed to those of Columbia.

Columbia intended that the then unimproved locus would be, or at the very least, could be, used as a parking lot. As earlier noted, the lease agreement allowed Columbia to improve the premises and to sublet the premises "or any part thereof."

The undisputed facts show that Rifkin's employees and invitees regularly parked their cars (generally four in number but sometimes more, sometimes less) on the locus with Columbia's permission and in a manner identical to that of Columbia's employees and invitees. There was nothing to distinguish any of the cars as belonging to the employees and invitees of Columbia or those of Rifkin.

There are no facts, disputed or otherwise, which appear on the record to show whether the Poorvus knew of and assented to the arrangement between Rifkin and Columbia or whether they ever exercised their right to inspect their premises. We cannot infer from the recited undisputed facts, especially in view of the provisions of the lease agreement, that Rifkin's use of the lot was sufficiently remarkable that the Poorvus knew or should have known that such use was adverse to their rights to the locus. See *Tinker* v. *Bessel,* 213 Mass. at 76-77; *Curtis* v. *Brown,* 219 Mass. at 159.

III. *Conclusion.*

On the undisputed facts, we find no basis for concluding that Rifkin had acquired a prescriptive right to park cars on the locus. The judgment is reversed, and the matter is remanded to the Land Court to stand for further proceedings.

*So ordered.*