BROOKS, GILL AND COMPANY, INC. *vs.* LANDMARK
PROPERTIES, 217 LIMITED PARTNERSHIP.

Suffolk.    December 12, 1986. — February 20, 1987.

Present: GREANEY, C.J., WARNER, & FINE, JJ.

*Adverse Possession and Prescription. Real Property,* Easement. *Easement.*

The judge in a Land Court proceeding was warranted in concluding that the
plaintiff had acquired an easement by prescription in a fire escape con-
nected both to its building and to the nearby building of the defendant
and that, where the continued presence of the fire escape would not
have seriously hindered the defendant's use of its building, the defendant
acted wrongfully in removing it. [529-532]

Where the judge in a Land Court proceeding found that the defendant had
acted wrongfully in removing a fire escape in which the plaintiff had
acquired an easement by prescription, she properly ordered the defendant
either to replace the fire escape or to pay the plaintiff the sum it would
require to construct an additional interior stairway adequate to meet
building code egress requirements, and it lay within the judge's preroga-
tive not to award damages for the rent that the plaintiff would have
received had certain space in the building not become unrentable due
to the defendant's removal of the fire escape. [532-533]

CIVIL ACTION commenced in the Land Court Department
on January 13, 1984.

The case was heard by *Marilyn M. Sullivan,* J.

*Julian J. D'Agostine (Howard P. Speicher* with him) for
the plaintiff.

*Thomas J. Carens* for the defendant.

FINE, J. A judge of the Land Court, after a trial without
jury, ruled that an easement by prescription had been created
in favor of the plaintiff, Brooks, Gill and Company, Inc.
(Brooks, Gill), in a fire escape connected to two buildings,
and that the defendant, Landmark Properties, 217 Limited
Partnership (Landmark), had acted wrongfully in removing the

fire escape. The buildings, owned by Brooks, Gill and Landmark, respectively, are located eight feet apart on abutting parcels of land in the North Station area of downtown Boston. On the basis of findings of fact and rulings of law, the judge ordered Landmark to restore or replace the fire escape or, alternatively, to pay damages to Brooks, Gill in the amount required to install an interior stairway meeting applicable building code requirements. The decision has resulted in cross appeals challenging, on the one hand, the conclusions as to the establishment of the easement and, on the other, the adequacy of the remedy afforded Brooks, Gill. We affirm the Land Court judgment in both aspects.

The judge's findings, for which there is support in the record, are not clearly erroneous. See Mass.R.Civ.P. 52(a), 365 Mass. 816 (1974), made applicable to these proceedings by an amendment to Mass.R.Civ.P. 1, 385 Mass. 1214 (1982). We summarize the facts based on those findings. Brooks, Gill has occupied a three-story commercial building continuously since 1962, first as a tenant and then, commencing in 1970, as owner. The previous owner had acquired title in 1894. For more than twenty years prior to July of 1983, a door on the third floor of the Brooks, Gill building opened onto a balcony which connected to a fire escape attached to Landmark's building. From the common fire escape, one leaving Brooks, Gill's third floor through the door could reach both the roof of its building and the ground. Originally, one reached the ground by stepping off the fire escape onto the roof of an adjacent building, passing over the roof and walking down stairs on the side of the building. When fire destroyed the adjacent structure in 1973, a cantilever-type fire escape was installed by the defendant's predecessor, which provided access to the ground from the fire escape. The fire escape and an interior stairway provided egress from Brooks, Gill's third floor.

The common fire escape was used sporadically by employees of Brooks, Gill, as well as by employees of various utilities, to reach the roof of the Brooks, Gill building in order to remove debris from a drain and to do repair work; it was never used as a means of escape from a fire. Repairs to the fire escape were

made by both parties. As noted above, in 1973, Landmark's predecessor installed the cantilever-type fire escape. Some time later, a complaint was brought against Brooks, Gill alleging that the fire escape from the third floor of its building was unsafe; consequently, Brooks, Gill made repairs.

The third floor of the Brooks, Gill building, consisting of 4,000 square feet of space, has not been rented separately during any relevant period. However, some time before July of 1983, Brooks, Gill determined that the third floor would be good rental space. The owners cleaned the area, built a staircase, created an entrance to the third floor from the street, and made inquiries about the cost of installing an elevator. A sign was placed in a third floor window at Brooks, Gill indicating that the premises were for rent. According to expert testimony, comparable space had a rental value of at least $7 per square foot. To rent the space, however, the continued existence of the fire escape would have been necessary to meet the egress requirements of the State building code. 780 Code Mass. Regs. §§ 609.2, 2203.7 (1980).

On June 1, 1983, Landmark acquired title to the abutting parcel, including the eight-story building to which the common fire escape was attached. Landmark acquired ownership of the fire escape along with the building. In the course of rehabilitating the building, Landmark, in July of 1983, demolished the fire escape. Brooks, Gill then brought this action in the Land Court for declaratory relief and damages.

On these facts the judge was warranted in finding a prescriptive easement based on open, notorious, uninterrupted and adverse use of the common fire escape by Brooks, Gill for at least twenty years. See *Tucker* v. *Poch,* 321 Mass. 321, 323-324 (1947); *Brown* v. *Sneider,* 9 Mass. App. Ct. 329, 331 (1980); *Boston Seaman's Friend Soc.* v. *Rifkin Management, Inc.,* 19 Mass. App. Ct. 248, 251-252 (1985). G. L. c. 187, § 2. Restatement of Property § 457 (1944). Evidence of use prior to Brooks, Gill's actual ownership of the property may, in the circumstances, be considered for the purpose of establishing the requisite twenty-year period. *Ryan* v. *Stavros,* 348 Mass. 251, 264-265 (1964). "The rule in Massachusetts is that

wherever there has been the use of an easement for twenty years unexplained, it will be presumed to be under claim of right and adverse, and will be sufficient to establish title by prescription and to authorize the presumption of a grant unless controlled or explained." *Truc* v. *Field,* 269 Mass. 524, 528-529 (1930). See *Tucker* v. *Poch,* 321 Mass. at 324; *American Oil Co.* v. *Alexanderian,* 338 Mass. 112, 115 (1958). There is nothing in the evidence to overcome the presumption. Compare *Spencer* v. *Rabidou,* 340 Mass. 91, 93 (1959), where there was evidence of permission beyond mere acquiescence. Compare also *Boston Seaman's Friend Soc.* v. *Rifkin Management, Inc.,* 19 Mass. App. Ct. at 251-252.

Landmark's principal contention on appeal is that there was insufficient evidence of Brooks, Gill's actual continuous use of the fire escape for twenty years to establish the easement. Although the described instances of physical use of the fire escape over the years were hardly sufficient by themselves to create an easement by prescription, the case turns on the peculiar nature of a fire escape. It was being "used" continuously after 1962, even if the occasions for representatives of Brooks, Gill to walk on it were few. Brooks, Gill "used" the fire escape as its method of satisfying the State building code requirements for egress. Without interruption, it afforded to the occupants of the Brooks, Gill building a safe evacuation route should a fire prevent egress through other exits. In this sense its "use" was analogous to the use of a wall in an adjoining building for support, which, by its very existence in a particular location, may be "used" in such a way as to create a prescriptive easement. See *Ottavia* v. *Savarese,* 338 Mass. 330, 334-335 (1959). Contrast *Merriam* v. *352 West 42nd Street Corp.,* 14 A.D.2d 383 (N.Y. 1961). We think the judge correctly analyzed the facts along these lines as a basis for her conclusion that the continuous use requirement had been satisfied.[1]

[1] Landmark's remaining objections to the conclusion that an easement by prescription was created are based upon principles applicable to claims of adverse possession of a fee interest in property but not to claims of prescriptive easements. It is unnecessary to prove either exclusive possession or assertion of a legal right to ownership of the property in order to establish a prescriptive easement. See *Labounty* v. *Vickers,* 352 Mass. 337, 349 (1967).

The removal of the fire escape, over which Brooks, Gill had acquired an easement by prescription, was wrongful. "The owner of the property burdened by the easement . . . may not use his land in a way that will interfere with the easement owner's right of use." *Texon, Inc.* v. *Holyoke Machine Co.,* 8 Mass. App. Ct. 363, 365 (1979). Landmark relies on *Union Natl. Bank* v. *Nesmith,* 238 Mass. 247 (1921), and *Cotting* v. *Boston,* 201 Mass. 97 (1909), to urge otherwise. In the *Nesmith* case, the court held that a prescriptive right to use the entrance, landings and a stairway in a building terminated when the building was demolished by the owner. In the *Cotting* case, the right of passage through an adjoining store had been expressly created by deed, and the same result was reached. See also *Kakas Bros.* v. *Kaplan,* 331 Mass. 323, 327 (1954), and cases cited. Those precedents might have buttressed Landmark's position had it demolished all of its building or so much thereof that the structure remaining would not have supported the fire escape. (However, contrast *Texon, Inc.* v. *Holyoke Machine Co.,* 8 Mass. App. Ct. 363 [1979], in which a property owner who had expressly reserved the right to maintain steam and electrical conduits through another's building was held to have the right to have the owner of that building relocate the conduits when the building was demolished.) Unlike the situation in the cases on which Landmark relies, however, Landmark destroyed only the fire escape, the continued existence of which would not seriously have hindered Landmark's use of its building.

The remedy ordered, replacement of the fire escape or, alternatively, payment to Brooks, Gill of the amount required for it to install a second interior stairway adequate to meet the State building code egress requirements, was proper as far as it went. See *Texon, Inc.* v. *Holyoke Machine Co.,* 8 Mass. App. Ct. at 366. Brooks, Gill urges that the judge should have gone further and awarded damages, in addition, for the rent it would have received for the third floor had the space not become unrentable due to the destruction of the fire escape. The judge found that Brooks, Gill had taken steps before the fire escape was removed to make the premises suitable for

rental. In addition, she had before her testimony from witnesses, even one called by Landmark, that comparable space in the downtown Boston commercial real estate market at the time had a net rental value of at least $7 per square foot. The judge declined to award damages for loss of rental income, however, because, on the evidence, she found such losses to be speculative. As the judge pointed out, there was neither a rental history for the property nor an identifiable prospective tenant. No one had been hired to construct an elevator. Only one sign in a third floor window advertised that the premises might be for rent. This evidence could have left the judge uncertain whether, but for Landmark's wrongful conduct, the premises would have been rented within a reasonable time. We think the decision not to award damages for lost rental income fell within the judge's prerogative as fact finder, notwithstanding evidence which might have warranted a contrary result. Compare *McDonald* v. *Hawker,* 11 Mass. App. Ct. 869, 877 (1981).

*Judgment affirmed.*