## PEARLEY COOK *vs.* CAMDEN H. BABCOCK.

If acts of ownership and possession relied upon as proof of a title by disseisin are not of a nature to work a disseisin, they cannot be made more effectual for that purpose, by proof that they were known and not objected to by the legal owner.

TRESPASS *quare clausum* for cutting trees on a tract of woodland claimed by the plaintiff. The defendant pleaded the general issue, and specified soil and freehold in himself. He claimed title under a warranty deed from his father, Abel Babcock, dated 4th May, 1849.· Abel Babcock derived his title under a warranty deed from Martin Sheldon, dated 12th March, 1819. Martin Sheldon had title under a deed of warranty from Edmund Gillmore, dated 25th June, 1811. All said deeds were duly acknowledged and recorded.

The plaintiff, among other grounds of title, claimed under an adverse exclusive possession. He offered evidence tending

to show that he entered upon the land in 1822, under a deed of mortgage from Stephen and Henry Clark to Thomas Her rick, dated January 18th, 1815, which came into his hands by assignment, 1st April, 1822 ; but which *Hoar*, J. in the court of common pleas ruled conveyed no title to the premises He offered evidence tending to show that at various times since 1822 he and his servants had cut trees upon the prem- ises; that he had repaired an old fence on the westerly side of the tract; had cleared a small portion of it; and upon that and another small portion previously cleared, had mowing and pasture. It was also in evidence that some twenty-three or twenty-four years since, one Searl, under his authority, raised a crop of rye upon this cleared portion. The fence on the west line of the premises in dispute extended as far north as the old town line ; it was a rail fence, and was repaired annu- ally by the plaintiff, and the occupants of the lot lying west of the premises; this lot was cleared and fenced as far north as the old town line of Blandford, and held adversely to Abel Babcock and the plaintiff. The plaintiff's cattle were in the habit of going upon most of the lot to feed. There was no fence between said lot and Abel Babcock on the northerly side, nor any fence on the west side of the same. The plain- tiff was in the habit of cutting wood thereon, for the use of his tenants, and also cut considerable quantities of wood and timber for various purposes, and pointed out the old town line to his tenants as the boundaries of his land on the north. The land in controversy had never been enclosed by a fence or in any other way, except as above stated.

The tract of land adjoining this on the northerly side was wood land, the undisputed property of the defendant, and that adjoining it on the southerly side was the undisputed property of the plaintiff. There was evidence tending to show that these acts of occupation on the part of the plaintiff, were known to the said Abel Babcock, and to the defendant, and Searl testified that said Abel at one time asked him what tempted him to go on to the mountain, and he told Babcock that Cook gave him the privilege of clearing what land he had a mind to, and had agreed to keep a cow and six

sheep for him. The plaintiff's adjoining land was already cleared. He also testified that he told said Abel he had sowed the rye three or four weeks after. After it was sowed, and when he had gathered the rye, he drew it by Babcock's house, and Abel Babcock told him he thought he had a fine crop.

It appeared that the said Babcock lived on the land he bought of Sheldon, and that a considerable part of it was cultivated; that there was a path running near the premises in dispute ; and the witness, Searl, described to said Babcock the place where he raised the rye. It also appeared that as early as the year 1827, Babcock declared that he could not hold any land south of the old town line, and pointed out that line to Mr. Bell, as hereafter stated, and also claimed damages of Sheldon as stated.

One Samuel Bell testified, that eighteen or twenty years ago, the said Abel showed him a beech-tree which he said " was standing on the old line of Blandford as far south as he (said Abel) went." This beech-tree stood west of the line in dispute between these parties, and was not adjacent to land claimed by the plaintiff, but to a tract claimed by other parties. The said beech-tree stood on the line of the lot which lies westerly of the premises, and which was held adversely to said Babcock.

There was evidence tending to show that the old town line was acknowledged by the adjoining proprietors as the established line of their lots.

The plaintiff also introduced evidence tending to show that Abel Babcock, about the year 1827, declared to two witnesses that Sheldon, his grantor, had made him a deduction of five or six hundred dollars, on account of the disputed land lying between the old and new line of Blandford, and because said Babcock could not hold south of the old town line. One Abel Weaver, a witness called by the plaintiff, testified that he occupied land adjoining the premises on the westerly side of it and adjoining the old town line, and that Abel Babcock never to him claimed south of the old town line, except in one instance, when said Abel gave one Johnson leave to build a

hut upon the land south of said old line claimed by said Weaver, and said Johnson built said hut. There was some evidence in regard to the claims of Abel Babcock and Camden H. Babcock to the premises since 1822, and of acts of occupation by them, which was submitted to the jury under the following instructions from the court: That the acts of occupation proved, would not of themselves amount to a disseisin of the defendant or his father, but that if the jury were satisfied that these acts of the plaintiff were known to the defendant and his father, and were assented to by them as rightful acts, they making no claim to the land themselves, but disclaiming any title thereto, and the father taking pay from his grantor for a defect in his title, then the jury might find that the father and son were disseised, and such disseisin, if continued twenty years, would debar the defendant of all right to the land; but any direct acts of occupation or ownership, or assertion of claim on the part of the Babcocks within such period of twenty years, would prevent the disseisin from taking effect.

The judge further instructed the jury, if Abel Babcock was disseised and continued so disseised down to the time of his deed to the defendant, although not a period of twenty years, nothing would pass by said deed, and the plaintiff's possession, although not continued for twenty years, would be of itself sufficient as against the defendant, to render him a trespasser and maintain this action; but further instructed them that they need not consider this point, because there was no evidence tending to show a disseisin, at the time of the deed from Abel Babcock to Camden H. Babcock, which would not equally apply to the whole period of twenty years claimed.

The jury found a verdict for the plaintiff, and the defendant excepted to these rulings.

*H. Morris*, for the defendant.

*W. G. Bates*, for the plaintiff.

BIGELOW, J. Where a party claims by a disseisin, ripened into a good title by lapse of time as against the legal owner, he must show an actual, open, exclusive, and adverse possession of the land. All these elements are essential to be

18 *

proved, and the failure to establish any one of them is fatal to the validity of the claim. In weighing and applying the evidence in support of such a title, the acts of the wrongdoer are to be construed strictly, and the true owner is not to be barred of his right except upon clear proof of an actual occupancy, clear, definite, positive, and notorious. 2 Greenl. Ev. § 557; Stearns on Real Actions, 39; *Jackson* v. *Schoonmaker*, 2 Johns. 230; *Kennebec Proprietors* v. *Springer*, 4 Mass. 416; *Blood* v. *Wood*, 1 Met. 528; *Coburn* v. *Hollis*, 3 Met. 125; *Boston and Worcester Railroad Corporation* v. *Sparhawk*, 5 Met. 469; *Slater* v. *Jepherson*, 6 Cush. 129. It is not sufficient, therefore, in order to maintain a title by disseisin, to show, that the legal owner had actual knowledge of and assented to acts of ownership upon his lands. Such proof may be equivalent to evidence that such acts were open and notorious, because it gives the owner notice that his seisin is interrupted and that his title may be endangered. But these acts must not be merely occasional, partial or temporary in their nature. A party may have knowledge of frequent and long continued trespasses on his property without being barred of his right. The possession must be actual, exclusive, and adverse, as well as notorious and open, or actually known to the real owner. On the one hand, if the acts of ownership and possession by a disseisin are not of a nature to work a disseisin, they cannot be made more effectual for this purpose by proof that they were known and not objected to by the legal owner, and on the other hand, evidence of actual exclusive and adverse possession will not avail as proof of title, unless it is shown to have been open and notorious or actually brought home to the knowledge of the person holding the legal title. On this principle, it has been held that where parties have established by agreement, conventional lines as the true boundaries of their respective estates, no disseisin is worked by such agreement, unless it is followed by an exclusive adverse possession according to the lines thus established. 5 Met. 469. Strictly speaking, the consent of the legal owner to an act of disseisin is a contradiction in terms. Disseisin, like trespass, is a tortious act adverse in its nature and in deroga-

tion of the right of the true owner. To say that a party consents to such an act is to deprive it of its wrongful char-acter, and make it an acknowledgment instead of a denial of title.

Applying these principles to the case at bar, it appears to us that the instructions of the judge, who presided at the trial, were liable to be misapprehended, because they author-ized the jury to find a verdict for the plaintiff on the ground of assent by the defendant and his grantor to acts of posses-sion and ownership on the part of the plaintiff, although the acts proved were not sufficient to work a disseisin. It would have been more accurate to have explained to the jury the legal definition of the term disseisin and the elements neces-sary to be proved in order to establish a title thereby, and left it for them to determine upon the evidence whether the entry and possession of the plaintiff were actual, exclusive and adverse as well as known to the defendant. Upon the instructions as they stand, we feel constrained to set aside the verdict and order a new trial. It is very questionable whether upon the evidence, taking into view the acts of the plaintiff and the uncultivated nature of the premises in question, there was any sufficient proof to warrant a jury in finding a title by disseisin in the plaintiff, but as this question has not been argued, we forbear to express a decided opinion upon it. See *Slater* v. *Jepherson*, 6 Cush. 129.        *Exceptions sustained.*