EDWARD GADREAULT *vs.* DEAN HILLMAN.

Franklin. October 25, 1944. — February 7, 1945.

Present: FIELD, C.J., QUA, DOLAN, WILKINS, & SPALDING, JJ.

*Adverse Possession and Prescription. Equity Pleading and Practice,* Master: findings.

From language in a master's report in a suit in equity without a report of the evidence, "Therefore, I am unable to find on the evidence," it appeared that his ultimate findings were based on the evidence and not solely on findings of subsidiary facts made by him; and the court was bound by the ultimate findings unless subsidiary facts demonstrated that the ultimate findings were not justified on any evidence that might have been before the master.

In a suit in equity to enjoin the defendant from using a roadway across the plaintiff's pasture, located some distance from the plaintiff's house, where the defendant claimed a right to such use acquired by adverse possession, findings by a master on the evidence before him, not reported, that the defendant had failed to prove a use of the roadway for twenty years uninterrupted, open and adverse and under a claim of right, were not inconsistent with subsidiary facts found and reported by the master, and a decree properly was entered for the plaintiff.

BILL IN EQUITY, filed in the Superior Court on May 12, 1941.

The case was heard by *Hammond,* J.

In this court the case was submitted on briefs.

*C. Fairhurst,* for the defendant.

*M. J. Levy,* for the plaintiff.

DOLAN, J. By this bill in equity the plaintiff seeks to have the defendant permanently enjoined from crossing certain land owned by the plaintiff. Answering, the defendant alleged that he has the legal right to cross the premises involved, that he and his predecessors in title have claimed and enjoyed that right for more than twenty years, and that said right accrued by peaceful and adverse possession, has never been abandoned or extinguished, and is a right appurtenant to the defendant's premises. The case was referred to a master and comes before us on

the defendant's appeal from the interlocutory decree over-
ruling his exceptions to and confirming the report, and
from the final decree granting the relief prayed for.

Material facts found by the master follow. Included
in certain real estate owned by the plaintiff in Colrain is
a pasture overgrown with brush and trees. An old road-
way runs through the pasture for about one quarter of
a mile. It is fairly passable for a horse drawn cart or sled,
except in a strip toward the west side where brush and
trees have grown up in the way itself. There was no evi-
dence that the roadway was necessary for the use of the
pasture. The defendant has no right of way of record
over the roadway, and does not own any property ad-
joining that of the plaintiff. Property adjoining that of
the plaintiff on the west was formerly owned by Wayne
Hillman and is now controlled by his son Alfred. West
of this property is that formerly owned by Frederick M.
Thompson which was acquired by Wayne Hillman from
him in 1895. The defendant's wife, now deceased, was a
daughter of Wayne Hillman, and she acquired a part of
the Thompson land in 1914 by inheritance from her father
and by deed from his other heirs. The defendant inherited
an interest therein from his wife. The remainder of the
Thompson property is owned by Arthur Fish who acquired
it in 1910. The Thompson property borders on the high-
way and may be reached by turning westerly at the top
of Christian Hill after passing the plaintiff's property.
Where this road turns west, there is a steep hill going
down, and in order to take lumber from the ravine on
the Thompson property onto the highway it is necessary
in returning to climb this hill. By following the old road-
way to the east through the woods across the Alfred Hill-
man property and across the plaintiff's pasture, that climb
can be avoided and some distance cut off. The defendant
also owns other property known as the west pasture. It
does not adjoin the plaintiff's property, but it is also more
convenient to take wood and other articles onto the old
roadway in the plaintiff's pasture and from there to the
highway, than to take them up the steep highway that

adjoins the west pasture on the north. It is actually three quarters of a mile to a mile from the plaintiff's west boundary along the old roadway to the east boundary of the Thompson property. In order to reach the plaintiff's property by means of this roadway from the Thompson place or the west pasture, the defendant must cross intervening property. The plaintiff acquired title to his property by deed of George F. White dated January 9, 1932. White had acquired title thereto in 1930 from the estate of Jane L. Clark, who had acquired title from Eleanora Sturtevant and Charles White on October 17, 1891. While George F. White owned this property he sold the standing timber to one Willey and gave him the right to enter upon the property until November 15, 1935, for the purpose of getting out the timber. The old roadway was in existence at least fifty or sixty years ago but there were barways at the Christian Hill entrance. Wayne Hillman drew timber from his Wash White Hollow property over the roadway and caused repairs of the roadway to be made, but this use of the roadway had nothing to do with the defendant's property. One Gilderdale helped one Peterson to fix the roadway many years ago. Peterson owned the Wash White Hollow place and had logs to get out but it is forty years since Gilderdale has been over the roadway. In 1914 Joel Clark put a fence around the pasture in question and put cattle in the pasture. The bars above referred to were there while Jane L. Clark controlled the plaintiff's pasture, that is, for about forty years ending in 1930. One Fish used the roadway when he was working for Wayne Hillman, but Fish owned none of the property that the defendant now owns, and testified that in 1914 Clark fenced the pasture. Kemp and Herzig and other landowners in the vicinity also used the roadway from time to time and occasionally took timber out. About thirty years ago there was what was called a depot at a point opposite that where the roadway enters Christian Hill Road. It was an open cleared space where people were accustomed to leave supplies. In the fall of 1935 the plaintiff repaired all the fencing and completely en-

closed the pasture with three-strand barbed wire. In the spring of 1938 the plaintiff discovered that the wire fencing had been cut at each end of the old roadway where it left his property. It had been cut by the defendant. In 1939 the defendant went to the plaintiff's house and requested permission to haul wood out over this roadway. The plaintiff refused permission. The defendant also requested George F. White to get permission from the plaintiff to do so. Despite refusal on the part of the plaintiff, the defendant cut the wires again in the spring of 1941 and hauled wood over the roadway. There was evidence that barbed wires have been strung across the ends of the roadway at the plaintiff's boundaries for many years. For many years from time to time people went through the old roadway in the winter when the public highway was blocked with snow. Other occasional uses of the old roadway were found by the master, some by persons who did not at any time own any of the property that the defendant now owns. During the thirty years preceding the beginning of the present suit the defendant had used the roadway almost every winter to get wood out, but only during the winter months. There was no evidence that the Clarks ever had actual knowledge that he was using the roadway, nor that George F. White had such knowledge. It was in February, 1941, that the plaintiff first saw the defendant hauling wood over the roadway. The ultimate findings of the master are these: "Therefore, I am unable to find on the evidence that the use of the roadway by the defendant or his predecessors in title was so extensive, open and notorious that the then owner of the plaintiff's property should have known of the same. The principal use of the roadway by the defendant was, as stated above, during the winter months when snow was on the ground and when there was no reason why the owner of the property would have occasion to see it. The roadway is about three quarters of a mile distant from the dwelling house and to reach it one must climb a long and rather steep hill. Because of the fact that the defendant sought some permission from the plaintiff to cut the wire and use the

roadway in 1939 and because he requested George White the same year to see whether he could obtain such permission I am unable to make a finding that the defendant himself has used the roadway for a period of more than twenty years under a claim of right."

The defendant's exceptions to the master's report were, in substance, that certain specific findings and the ultimate findings of the master were not justified by the evidence, and that the facts found by the master do not justify his ultimate findings. There is no statement in the report, nor does it appear upon its face, that the ultimate findings of fact are based solely upon the subsidiary facts found. The ultimate findings may have rested on evidence that was not before the judge and is not before us. Consequently the judge and this court are bound by the ultimate findings unless the subsidiary facts found are sufficient in themselves to demonstrate that the ultimate findings could not be justified upon any evidence that the master might have received. *Dodge* v. *Anna Jaques Hospital*, 301 Mass. 431, 435. *Franz* v. *Franz*, 308 Mass. 262, 267. *Ferrone* v. *Rossi*, 311 Mass. 591, 594. *Leavitt* v. *Elkin*, 314 Mass. 396, 397–398. *VanBuskirk* v. *Diamond*, 316 Mass. 453, 459. In the instant case, while the ultimate findings of the master were preceded by the words "Therefore, I am unable to find," those words were immediately followed by the words "on the evidence," so that it appears that it was on the evidence that he based his ultimate findings and not solely on the subsidiary findings of fact made by him. Compare *Robinson* v. *Pero*, 272 Mass. 482, 484; *Saltman* v. *Smith*, 313 Mass. 135, 141–142; *Murray* v. *Bateman*, 315 Mass. 113, 117. It is open, however, to the defendant to contend that the ultimate findings of the master are inconsistent with his subsidiary findings. *Kasper* v. *H. P. Hood & Sons, Inc.* 291 Mass. 24. *Cavazza* v. *Cavazza, ante*, 200, 203.

In arguing that the ultimate findings of the master are inconsistent with his subsidiary findings, the defendant stresses the subsidiary findings relative to the existence of the so called depot opposite one of the entrances to

the roadway and those concerning the use of the roadway by persons including the defendant, above recited. The findings as to the existence of the so called depot show no more than by inference a use thirty or more years ago by residents in the vicinity for convenience only and not under any claim of right. The findings as to the use by Wayne Hillman of the roadway tend only to show its use by him in connection with property not owned by the defendant. And the master has found that following the use by Fish of the roadway in 1910 the pasture in question was fenced from 1914 to 1930 by the then owner Clark who had controlled the pasture from 1891 to 1930, and that during that period when the defendant used the roadway to draw some wood out he had to remove the wire at one end of the roadway and take down bars at the other end. The findings of the master as to the use made of the roadway by Barnard and Peterson do not require a conclusion that it was other than casual without claim of right, and in the case of Gilderdale the master has found that he had not used the roadway for over forty years. The master's findings as to the use of the roadway by Kemp and Herzig fall far short of showing that their occasional use was in connection with any land owned by the defendant or his predecessors in title.

We interpret the ultimate finding of the master to be in effect that upon the evidence the defendant had failed to prove a use for twenty years uninterrupted, open and adverse and under a claim of right. That burden rests upon one who asserts title by adverse possession, and if he leaves any of the elements of adverse possession in doubt he cannot prevail. *Sargent* v. *Ballard*, 9 Pick. 251, 254. *Powell* v. *Bagg*, 8 Gray, 441, 443. *Edson* v. *Munsell*, 10 Allen, 557, 568. *Nantucket* v. *Mitchell*, 271 Mass. 62, 68. *Albano* v. *Puopolo*, 309 Mass. 501, 506–507. See also *Cook* v. *Babcock*, 11 Cush. 206, 210; *Tinker* v. *Bessel*, 213 Mass. 74, 76. The master has found that the use of the roadway by the defendant and his predecessors in title was not so extensive that the owners for the time being of the plaintiff's property should have known of it, and that

it was not under a claim of right for more than twenty years. We are of opinion that those findings are not inconsistent with subsidiary findings of fact made by the master. There is nothing in the findings to show that Jane L. Clark knew that the defendant or his predecessors in title were going through the roadway or making any claim of right to do so. In 1914 her husband Joel fenced in the pasture in which the roadway is located. And it has been held that such an assertion of right is sufficient to prevent the gaining of a right of way, and that a "landowner in order to prevent that result is not required to battle successfully for his rights; it is enough if he asserts them to the other party by an overt act, which, if the easement existed, would be a cause of action. Such an assertion interrupts the would be dominant owner's impression of acquiescence and the growth in his mind of a fixed association of ideas, or, if the principle of prescription be attributed solely to the acquiescence of the servient owner, it shows that the acquiescence was not a fact." *Brayden* v. *New York, New Haven & Hartford Railroad,* 172 Mass. 225, 226, and cases cited. In the instant case the fencing by the Clarks, continued by the plaintiff, was an interruption of the use of the way by others. *Weld* v. *Brooks,* 152 Mass. 297, 303, 306. An examination of the subsidiary findings of the master satisfies us that a finding would not be justified that any predecessor in title of the defendant had acquired a right of way by adverse use over the roadway in question, and that the defendant did not sustain the burden of proving that the use alleged by him was so open and notorious that the plaintiff, the owner of the land, or his predecessors in title ought to have known of it and that therefore his acquiescence could be presumed. See *Deerfield* v. *Connecticut River Railroad,* 144 Mass. 325, 338. In the present case it may be inferred properly in view of the time of the use by others, that is, in the winter time, the distance of the plaintiff's house from the roadway and the general character of the locus, that the opportunity of the owner or owners for the time being to observe such a use would be small, and the acts

of the wrongdoer are to be construed strictly. *Tinker* v. *Bessel,* 213 Mass. 74, 76. See also *Bowen* v. *Guild,* 130 Mass. 121, 123, 124; *Houghton* v. *Wilhelmy,* 157 Mass. 521, 524; *White* v. *Shippee,* 216 Mass. 23, 25; *McDonough* v. *Everett,* 237 Mass. 378, 383–384; *LaChance* v. *First National Bank & Trust Co.* 301 Mass. 488, 490.

The finding that the adverse possession relied upon was not under a claim of right is not inconsistent with the findings of subsidiary facts. The use of the roadway by Willey was permissive. In the instant case the fact found that in 1939 the defendant sought the permission of the plaintiff to use the roadway is of some significance. See *White* v. *Chapin,* 12 Allen, 516, 521, 522; *Truc* v. *Field,* 269 Mass. 524, 529. We do not intimate that this fact standing alone would be conclusive. While the master assigned that fact as one of the reasons for his ultimate findings, he was not called upon to assign reasons and we are not bound by them. Whether the ultimate findings of the master are justified must be determined upon the subsidiary facts actually found by him. Since those findings are not inconsistent, it is the duty of the court to decide on the facts found what, if any, relief should be granted. *Anglim* v. *Brockton,* 278 Mass. 90, 94. Entirely apart from that statement by the master, we are of opinion that the subsidiary facts found are not inconsistent with the ultimate finding to the effect that the defendant had not sustained the burden of proving the adverse possession upon which he rests his claim to the right to use the roadway in question.

*Interlocutory decree affirmed.*
*Final decree affirmed with costs.*