Quinlan, Regina L., J.
This is a civil action in which the plaintiff Sea Pines Condominium III Association (“Sea Pines”) is seeking title by adverse possession to a portion of the land now owned by the defendant John Mostyn (“Mostyn”) as he is Trustee of the Lot 106-2 Dune Road Realty Trust.[1] (Count I.) Alternatively the plaintiff is seeking a prescriptive easement to that portion of the land in dispute. (Count II.) The disputed property is located to the west of the property line dividing the property owned by the plaintiff from property owned by the defendant Mostyn, as Trustee, who disputes the plaintiffs claims to any portion of his property.
After a trial, without a jury, and based upon all of the credible evidence, the court makes the following findings of fact and rulings of law.

FINDINGS OF FACT

The Sea Pines Condominium III (the condominium) is located on land formerly owned by the Sea Pines School in Brewster. Sea Pines Condominium III is one of four condominiums developed from the Sea Pines School property. That property, consisting of 35.64 acres, was divided into four parcels of which approximately 14.629 was submitted to the provisions of G.L.c. 183A for Sea Pines Condominium III. The Sea Pines Condominium III was established by Master Deed pursuant to G.L.c. 183A, §8 dated June 17, 1977 and recorded in the Barnstable County Registry of Deeds Book 2531, Page 167.
The site of the condominium is located off Route 6A as shown in the plan of H.W. Moore Associates, Inc. dated February 7, 1977 appended to the Master Deed. The Sea Pines Condominium III Association is the organization of unit owners for the Sea Pines Condominium III. The four Sea Pines condominiums consolidated their management and maintenance functions into the Facilities Management Board (the FMB) in 1981. The FMB has been responsible for grounds maintenance and landscaping for all of the Sea Pines condominiums since that date. Prior to that, during the period from 1974 or 1975 to 1981, there was a grounds maintenance committee for the four Sea Pines Condominiums. Prior to 1974 or 1975, the grounds maintenance was handled by the developer.
In 1978, the land to the west of the condominium property was owned by Esther L. Steffens (the Steffens’ property). The Steffens’ property is shown on the Moore Associates Plan. From 1978 though 1999, the Steffens’ property was undeveloped. That property was sold in 1999 to Mostyn, as he is Trustee of the Lot 106-2 Dunn Road Realty Trust. Following the purchase by Mostyn, the Steffens’ property was developed. Mostyn built a road and large residence near the easterly boundary adjacent to the Sea Pines property and near the bluff overlooking Cape Cod Bay and the beach. The bluff is approximately twenty-five feet above the beach.
The Sea Pines Condominiums were developed by Corcoran, Mullens, and Jennison. The Sea Pines Condominium III consists of twelve units located in six separate buildings, each building having two units. Units DIO and D9[2] are located in the building closest to the bluff overlooking the beach and Cape Cod Bay. Units D8 and D7 are located in the building nearest to the west boundary and to the rear of DIO and D9. *157 Units D6 and D5 are located in the building on the westerly side of the property furthest from the bluff and to the rear of units D8 and D7. The three buildings in which these units are located are in a row which is roughly parallel to the western property line. Units D9, D7, and D5 are located on the side further from the boundary line between the condominium property and the Steffens’ property. See the Moore Associates plan.[3]
Development of the property on which the condominium was to be located began at some point prior to 1978. In 1978, the development began in earnest. At this time, the building with units D9 and DIO had been built. Railroad ties had been installed on the bluff to stabilize it until plants could take root. The buildings for units D7 and D8 had not yet been built. There was a triangular shaped lawn area with grass adjacent to D9/D10 ending in front of the place where D7/D8 building would be built. See Exhibits 9 and 10.[4] The building for units D5 and D6 had been built by July of 1978. Unit D5 was ready for occupancy and was conveyed to Mr. and Mrs. Paul Villiere on July 13, 1978. At that time, the building for units D7 and D8 was still under construction.
By 1979, the units had been completed, the construction debris had been removed, and the lawn area had been completed. See Exhibit 11. The lawn extended from the front of the building with D5 and D6 to the bluff area. There was an area of low growing vegetation near to the west of the cleared bluff area which can be seen on Exhibit 32 in the area marked as the “trimmed area.” Once construction was completed, the low growing vegetation grew taller and stronger. It appears that the area was not trimmed in 1978 or 1979.
Residents of units D5 and D6, as well as other unit owners from the Sea Pines Condominium III, could walk over the lawn area to the bluff. In 1978 and 1979, the owners of units D5 and D6 had a view of Cape Cod Bay from the decks which were located on the first and second floors. Because unit D5 was furthest from the property line, the scope of the view from that unit was limited and diminished the further one walked eastward on the decks.
At the bluff area, there was low growing vegetation. The area on the westerly side is the disputed area for the purposes of this case. In 1978, the vegetation was low. However, over the years it grew. From some point in time, the disputed area was kept trimmed to approximately four feet until 1999. See Exhibit 32. In 1999, the construction of a home on the Steffens’ property precipitated this dispute. In August of 1999 this action was brought after the landscaper hired by the FMB was directed to stop pruning and trimming in the disputed area.
It is unclear when the trimming of the disputed area began. In 1978, the disputed area had been cleared to the sand for construction purposes. In 1979, following construction, the natural vegetation began to reassert itself. The area had oak brush. How long it took to grow more than three feet is not clear. However, the witness Villiere estimated that it took three to four years to grow to a height of at least three feet. Pruning and trimming was done by the FMB. Individual unit owners were prohibited from pruning or trimming trees, shrubs, or other vegetation. The first mention of pruning and trimming in the bluff and dunes area in the condominium budget is in late 1985, in reference to the budget and funding for 1986.
In 1998 when Frank Fiorentino purchased unit D5 from the Villieres, the disputed area was trimmed and kept low. A scrub pine tree with Cape Cod Bay in the background was visible from the decks of unit D5. In 1999, after construction began on the Steffens’ property and pruning was prohibited in the disputed area, Frank and Mary Fiorentino and Richard Parad and Judith Estroff, the owners of unit D8, brought this suit. Steffens was named as the sole defendant, and in October of 1999, Mostyn moved to intervene as the defendant. The motion was allowed. Joseph F. Corcoran, of Corcoran, Mullins, Jennison, Inc., has the beneficial interest in the trust to which Mostyn is trustee. His son, Joseph J. Corcoran, testified at trial as to his memories of the area.
Joseph J. Corcoran worked as a laborer at Sea Pines in 1977-78. He and his family played wiffle ball on the lawn and he recalled only condominium unit owners and their guests using the lawn area. He remembered that the disputed area had been trimmed and cut but characterized the cutting as “intermittent and inconsistent... sometimes you would come down in the summer [and] it looked like it had been cut and sometimes it looked like it hadn’t been cut.” Corcoran stopped visiting the Sea Pines condominiums sometime around 1981 or 1982. He did not return until 1991. He thought things looked the same in 1991 as they did when he stopped visiting.
Frank Pease (“Pease”) first purchased a Sea Pines unit in 1978. His first visit to the Duneward section, the subject of this lawsuit, was in 1977 or 1978. He was familiar with the disputed area for the entire time period in question and served on the FMB eveiy year but one from its inception in late 1981. The FMB contracted with various companies to do the building and grounds maintenance. Pease recalled the trimming of the vegetation along the bluff going on for some thirty years but that the pruning was “sporadic” and that “no precise line” was maintained.
In 1999, incident to the construction on Mostyn’s property, surveyors put stakes in the property to identify the record property line. The placement of the stakes revealed that the easterly border of Mostyn’s property extended onto the lawn area and the area of low shrubs near the bluff. In 2002, Mostyn obtained an injunction which prohibited any further trimming in the disputed area. At the time of trial, the house on Mostyn’s property, had been built.

*158
RULINGS OF LAW

I. Adverse Possession

“Title by adverse possession can be acquired only by proof of nonpermissive use which is actual, open, notorious, exclusive and adverse for twenty years.” Lawrence v. Concord, 439 Mass. 416, 421 (2003), quoting from Kendall v. Selvaggio, 413 Mass. 619, 621-22 (1992); see G.L.c. 260, §21. “Acts of possession which are ‘few, intermittent and equivocal’ [are insufficient to] constitute adverse possession.” Kendall v. Selvaggio, 413 Mass. at 624, quoting from Parker v. Parker, 83 Mass. 245, 247 (1861). The burden of proof in any adverse possession case rests on the claimant and extends to all of the necessary elements of such possession. See Holmes v. Johnson, 324 Mass. 450, 453 (1949). If any of the elements remain unproven or left in doubt, the claimant cannot prevail. See Mendonca v. Cities Serv. Oil Co. 354 Mass. 323, 326 (1968); see also Tinker v. Bessel, 213 Mass. 74, 76 (1912), quoting from Cook v. Babcock, 65 Mass. 206, 210 (1853) (“The acts of the wrongdoer are to be construed strictly and ‘the true owner is not to be barred of his right except upon clear proof ”).
The acts constituting adverse possession must be inconsistent with the owner’s rights; otherwise, they would not place the owner on notice of the competing claim of right. See Ottavia v. Savarese, 338 Mass. 330, 334, 155 N.E.2d 432 (1959). “The nature and the extent of occupancy required to establish a right by adverse possession vary with the character of the land, the purposes for which it is adapted, and the uses to which it has been put.” LaChance v. First Nat’l Bank & Trust Co., 301 Mass. 488, 490 (1938). To succeed, the claimant must establish changes upon the land that constitute “such a control and dominion over the premises as to be readily considered acts similar to those which are usually and ordinarily associated with ownership.” Peck v. Bigelow, 34 Mass.App.Ct. 551, 556 (1993), quoting from LaChance v. First Nat’l Bank & Trust Co., 30 Mass. at 491; see, e.g., Lyon v. Parkinson, 330 Mass. 374, 380, (1953) (adverse possession established where claimant cleared land, formed rock garden, and installed rip-rap); Collins v. Cabral, 348 Mass. 797, 798 (1965) (adverse possession established where claimants maintained disputed lawn area, cleared land of poison ivy, filled and graded property, and installed septic system); Shaw v. Solari, 8 Mass.App.Ct. 151, 153 (1979) (adverse possession established where claimant erected chicken coop, built picket fence, and maintained driveway). The claimant’s acts of dominion and control must be sufficiently open and notorious to constitute “notice to all the world ... of an adverse claim of title.” Phipps v. Behr, 224 Mass. 342, 343 (1916).
While the owner’s actual knowledge of such use is not required, the use must be such that the owner should have known of it. See Lawrence v. Concord, 439 Mass. at 421-22; Foot v. Bauman, 333 Mass. 214, 218 (1955). “The guiding principle behind the elements of adverse possession is not to ascertain the intent or state of mind of the adverse claimant, but rather to provide notice to the true owner, allowing for the legal vindication of property rights.” Totman v. Malloy, 431 Mass. 143, 145 (2000).
In cases involving a claim of adverse possession to wild or woodlands, the claimant generally must establish that the land has been enclosed or reduced to cultivation. Senn v. Western Mass. Elec. Co., 18 Mass.App.Ct. 992, 993 (1984); see Dow v. Dow, 243 Mass. 587, 593 (1923).
The strict rule applicable to wild or woodlands is, however, but an application of the general rule to the circumstances presented by wild or uncultivated lands. That is to say, the nature of the occupancy and use must be such as to place the lawful owner on notice that another person is in occupancy of the land, under an apparent claim of right; in the circumstances of wild and unimproved land, a more pronounced occupation is needed to achieve that purpose. Accordingly, even the clearing of the land of all trees, on a single occasion, is inadequately continuous to satisfy the requirements for adverse possession.
Sea Pines Condo, v. Steffens, 61 Mass.App.Ct. 838, 848 (2004); see Slater v. Jepherson, 60 Mass. 129, 131-32 (1850). Nonetheless, the determination whether a set of activities is sufficient to support a claim of adverse possession is inherently fact-specific. See Kershaw v. Zecchini, 342 Mass. 318, 320 (1961); LaChance v. First Nat’l Bank & Trust Co., 301 Mass. at 490 (“Evidence insufficient to establish possession of a tract of vacant land in the count might be adequate proof of such possession of a lot in the center of a large cify”).
On a motion for summary judgment, Mostyn contended (and the motion judge agreed) that the plaintiffs claim to the trimmed brush area must be dismissed under the rule applicable to wild lands, because indigenous brush grew back after it was cleared incident to the initial development of the condominium. The motion for summary judgment was allowed (Connon, J.) and the case was dismissed. However on appeal, the Court found the following: *159 Sea Pines Condo, v. Steffens, 61 Mass.App.Ct. at 849. Accordingly, the Appeals Court vacated the dismissal. Id. On remand, this court will apply the law of adverse possession to the facts of this case. The following analysis will consider whether the plaintiffs possession of the land in dispute was actual and exclusive, open and notorious, continuous and uninterrupted, and adverse.
*158 [AJlthough the brush grew back, the association trimmed it on a regular and continuous basis to a degree that presented a visible and readily apparent line of demarcation alongside the adjacent uncultivated areas. That the revegetation of the area consisted of indigenous growth does not itself determine that the area was wild and uncultivated. Whether the degree of maintenance performed on the trimmed brush area was sufficient to constitute “cultivation,” or otherwise to support a claim of adverse possession, turns on questions of fact not adequately developed in the summary judgment record.

*159
A. Actual and Exclusive

The actual and exclusive requirement is met by a showing of “actual use and enjoyment of the properly as the average owner of similar property would use and enjoy it, so that people residing in the neighborhood would be justified in regarding the possessor as exercising the exclusive dominion and control incident to ownership.” Shaw v. Solari, 8 Mass.App.Ct. at 156-57, quoting § 15.3 of the American Law of Property (1952). This showing “establishes adverse possession in the absence of evidence that his possession is under license or tenancy.” Id. “As to actual use, ‘[a] judge must examine the nature of the occupancy in relation to the character of the land.’ ” Peck v. Bigelow, 34 Mass.App.Ct. at 556, quoting Kendall v. Selvaggio, 413 Mass. at 624. As to exclusive use, “such use must encompass a ‘disseisin’ of the record owner.” Curtis v. Brown, 219 Mass. 157, 159 (1914).
Because the land at issue is wild or woodlands, a more pronounced occupation is needed to place the lawful owner on notice that another person is in occupancy of the land. See Sea Pines Condominium III v. Steffens, 61 Mass.App.Ct. at 848. The defendant cites cases that discuss claims of adverse possession based on the removal of vegetation and cultivation. For example, in one case a claimant showed that for thirty years he had cut “wood and timber for use and sale, the cutting off at one time of all the wood and timber standing on the premises, the clearing of a small piece of the land with a view toward cultivation, the sale of part of the premises ...” Slater v. Jepherson, 60 Mass. at 131. The court found that these acts were not sufficient to constitute disseisin. Id. at 132. Similarly, in Senn v. Western Mass. Elec. Co., the court found that cutting timber, using logging roads and pasturing animals was “insufficient, as a matter of law, to sustain a verdict that the plaintiffs had obtained title by adverse possession ...” 18 Mass.App.Ct. at 993.
The plaintiff cites Kershaw v. Zeechini, in which the court held that clearing brush, cutting down trees, and placing pipes in the comer of the lot was a sufficient exercise of dominion and control. 342 Mass. at 320-21. However, Kershaw is distinct from the present situation because in that case, the trespassers had put in boundary markers and the area of land adversely possessed was clearly identifiable. Id. Here, on the other hand, the area of shrubs was not cleared consistently throughout the time period, nor was the demarcation line between the lawn and the woods consistent or clearly identifiable throughout the years. The court doubts whether the twice yearly pruning of the disputed area is a sufficient exercise of dominion and control to support the plaintiffs claim of adverse possession.

B. Open and Notorious

It is generally declared that the possession must be open and notorious, so that the owner as an average man, if in the neighborhood, would have notice in fact of such possession. §15.3 of the American Law of Property (1952). To be open the use must be made without attempted concealment. To be notorious it must be known to some who might reasonably be expected to communicate their knowledge to the owner if he maintained a reasonable degree of supervision over the premises. It is not necessary that the use be actually known to the owner for it to meet the test of being notorious. §8.56 of the American Law of Property (1952).
Here, there is a general consensus among the witnesses who testified that they were all aware that trimming and pmning occurred at various times and that the condominium association was responsible for the maintenance of the area in dispute. Furthermore, there is no evidence that the plaintiff tried to conceal its use of the land, nor use by the condo unit owners. Therefore, the openness requirement does not present an issue. There is, on the other hand, some dispute as to whether the plaintiffs use of the land was notorious. The plaintiff cites LaChance, in which the SJC held that changes to the land (e.g., removal of an old fence; filling a portion of the land; building a hen coop and a stone wall) were of a notorious character. 301 Mass, at 491. However, the changes to the land undertaken in LaChance were of a far more obvious and permanent nature than the changes to the land in the present case.
In regard to the openness and notoriety requirement, the defendant’s analysis focuses on two distinct periods. First, the defendant considers the period prior to 1986 and argues that “(e]ven if one were to commence the period from the alleged clearing in 1977 based on the above subsidiary facts, a finding would nevertheless be warranted that the condition of the land at issue was, after at least the 1978 replanting and until 1986 simply untouched, uncultivated native vegetation growing in place. This condition would neither be an obvious change nor in any fashion ‘notorious’ to the true owner of the land.” With respect to the period of time after the plaintiff began its bi-annual trimming of the plant growth (post-1986) the defendant expresses doubt as to whether the activity was “sufficient to constitute cultivation.” The defendant argues that if the cutting of timber is not sufficient to constitute adverse possession, the mere trimming of brush falls far short of the necessary acts. Gadreault v. Human, 317 Mass. 656, 662 (1945). In Gadreault, the court held that the clearing of brush and overgrowth to make use of a roadway was insuf *160 ficiently notorious since “the opportunity of the owner or owners for the time being to observe such a use would be small, and the acts of the wrongdoer are to be construed strictly." Id. at 662-63. Similarly, the bi-annual trimming of the disputed area from 1986 until 1999 provided little opportunity for the owner to observe the plaintiffs use of the property.
In addition, the defendant argues that contrary to what the Appeals Court said, there was no “visible and readily apparent line of demarcation alongside the adjacent uncultivated areas.” It is significant that the land adjacent to the condominiums was undeveloped because for much of the time period the disputed area was not trimmed or pruned, and when the routine maintenance did begin it was inconsistent and often inconspicuous. For these reasons, it is unlikely that the actions of the plaintiff were enough to satisfy the open and notorious requirement.
C. Continuous and Uninterrupted
Of great concern in this case is whether the plaintiff has occupied and used the land for the requisite twenty-year period necessary for an adverse possession claim. As mentioned above, the defendants believe that between 1977 and 1986, the “plaintiff did nothing to assert dominion or otherwise make it clear that they asserted a claim to any portion of the Mostyn land.” The facts indicate that development of the Sea Pines condominiums began in 1977. Part of the work involved clearing the land and removing vegetation. Pursuant to the Order of Conditions, indigenous vegetation was planted to stabilize the bluff. The photographs from 1982 (Exhibits 13, 14) show the area where the planting had taken place with “relatively low and undeveloped” plants. It is difficult to determine whether, as of 1982, there had not been any pruning or maintenance of that area. The low lying growth of the plants at this time suggests that there had not. This makes sense because as of that time, it is highly unlikely that the vegetation planted in 1977 would have “achieved a size or density which required pruning in order to maintain a view of the bay.”[5] However, Joseph J. Corcoran’s testimony indicated that prior to 1982 there had been inconsistent and intermittent trimming. Therefore, it can be inferred that any significant or routine pruning did not begin until some time after 1982.
The defendants focus on 1986 as a significant year because it is the year in which the Sea Pines FMB showed pruning as a “new” budget item. The evidentiary support for this is found in Exhibit 18, the summary of the FMB’s 1986 Budget and Method of Funding. It is clear that at least as early as 1986, the plaintiff engaged in routine pruning of the disputed area. The plaintiff has suggested that as of August 1997, the statute of limitations had run. The defendant suggests that the running of the twenty-year period terminated in May 1999 when “the lot line between the Mostyn parcel and the Sea Pines III lot was staked by surveyors, incident to the construction of the Corcoran house.” “To stop the running of the statute, the owner’s entry, with few exceptions, must be done openly on the land, so as to give notice of the interruption.” Pugatch v. Stoloff, 41 Mass.App.Ct. 536, 541-42 (1996). Here, the marking of the lotwith stakes was sufficiently open so as to give notice of the interruption.
Assuming that the first time the disputed area was trimmed was sometime in the early 1980s, and using this as the start date for the running of the adverse possession time period, it is clear that the plaintiff has not met the twenty-year requirement. The clearing of the land and planting of vegetation in 1977-78 by the developers did not begin the adverse possession period. The plaintiff cites Kershaw to suggest otherwise. 342 Mass. at 320. This case is different from Kershaw, where the court found that the statute of limitations began running when the trespassers cleared brush, cut down some trees, and placed pipes at the lot comers, even though their use after that was intermittent. Id. The initial acts in Kershaw were clearly an exercise of dominion and control over the property; whereas here, the action of planting vegetation was undertaken as a land use requirement and was clearly less evident of land ownership. Furthermore, the initial act of clearing and planting vegetation in this case was taken by the developers, and not the plaintiff.
The plaintiff has failed to show that they maintained continuous and uninterrupted possession of the disputed area for the requisite twenty years.

D. Adverse

The essence of adverseness which will give the necessary cause of action is a possession which is inconsistent with and hostile to the rights of the tme owner. §15.4 of the American Law of Property (1952). The essence of nonpermissive use is lack of consent from the tme owner. See Ottavia v. Savarese, 338 Mass. at 333-34. Where the use of the land is actual, open, and exclusive for a period of twenty years, the nonpermissiveness of the use may be inferred. Totman v. Malloy, 431 Mass. 143, 146 (2000). While it is tme that the plaintiff in this case did occupy and use the land without consent from the tme owner, it has not been shown unequivocally that the plaintiffs use of the land was exclusive and for aperiod of twentyyears.
In an adverse possession case, the burden of proof rests upon the plaintiff and extends to all of the necessary elements of such possession. See Mendonca v. Cities Serv. Oil Co., 354 Mass. 323, 326 (1968). Here, some of the elements of adverse possession remain unproven or left in doubt. Id. This is especially tme of the requirement that the possession be continuous and uninterrupted for twentyyears. In addition, it has not been clearly proven that the possession was notorious and exclusive. Because the acts of the wrongdoer are to be strictly construed, and because there remains some doubt as to whether all of the elements *161 have been proven, the plaintiff in this case cannot prevail on Count I of the complaint. Id.; see also Tinker v. Bessel 213 Mass. at 76; Cook v. Babcock, 65 Mass. at 210.

II. Easement by Prescription

The next inquiry is whether the plaintiff is entitled to the property in dispute under a claim of prescriptive easement. Acquisition by prescription of a right of way over land of another requires continued, uninterrupted use of that easement for twenty years. G.L.c. 187, §2. “(W]herever there has been the use of an easement for twenty years unexplained, it will be presumed to be under claim of right and adverse, and will be sufficient to establish title by prescription and to authorize the presumption of a grant unless controlled or explained.” Truc v. Field, 269 Mass. 524, 528-29 (1930); see Tucker v. Pocb, 321 Mass. 321, 324 (1947). As with adverse possession, the use must be open, notorious, continuous, and adverse. Ryan v. Stavros, 348 Mass. 251, 263 (1964); Boston Seaman’s Friend Soc. v. Rifkin Mgmt., Inc., 19 Mass.App.Ct. 248, 251 (1985).
Because Sea Pines is unable to meet its burden of proving that all of the elements of adverse possession have been satisfied, it is similarly unable to establish an easement by prescription.

CONCLUSION

Sea Pines has failed to demonstrate that it is entitled to either title by adverse possession or to a prescriptive easement to the property in dispute.

ORDER

Based upon the foregoing, the court finds that the plaintiff has not acquired title to the defendant’s property through adverse possession, nor has it acquired a prescriptive easement to the property. Therefore, it is ORDERED that judgment shall enter for the defendant.

When the action was filed, the disputed property was owned by Esther L. Steffens. By order of the court (O’Neill, J.) on December 20, 1999, the defendant Mostyn’s Motion to Intervene as a defendant was allowed. At the time, Mostyn was the purchaser under a purchase and sale agreement for the Steffens property. Title subsequently transferred to Mostyn, who is now the owner of the disputed property.

D refers to the dunes area.

In other words, facing the buddings in which units 9, 7, and 5 are located from the south facing Cape Cod Bay, unit D9, D7 and D5 are on the right side.

The second building in the 1977 photographs is the building with Units D11 and D12.

See the Defendant’s Requested Findings of Fact and Rulings of Law.